**UPPER VALLEY AVIATION, INC.,**
**Appellant,**

v.

**Ward FRYER, Appellee.**

**No. 12.**

Court of Civil Appeals of Texas.

Corpus Christi.

June 29, 1965.

Rehearing Denied July 29, 1965.

Cox & Wilson, by Bascom Cox, Brownsville, Rankin, Kern, Martinez & de la Garza, by H. H. Rankin, Jr., McAllen, for appellant.

Kelley, Looney, McLean & Littleton, by Ralph Alexander, Edinburg, for appellee.

NYE, Justice.

This is a suit for damages brought by the owner of an airplane, Upper Valley Aviation, Inc., against Ward Fryer, the pilot. Ward Fryer, hereinafter called appellee, rented a small single-engine private plane from the appellant Upper Valley Aviation, Inc., in McAllen, Texas, for the purpose of flying to Washington, D. C. It was stipulated that the relationship between the parties to this suit was that of bailor and bailee. On the return trip from Washington, the appellee crash-landed in Alabama. The case was tried before a jury. In response to special issues submitted and answered, the jury exonerated the appellee from negligence and found that the appellant was contributorily negligent. From a judgment entered that appellant take nothing, its appeal to this Court has been perfected.

In January of 1961, appellee and his wife decided to attend the inauguration of President Kennedy in Washington, D. C. He rented the airplane, a Piper Comanche 250, from appellant. The appellee flew to Washington in gradual stages, stopping in Austin, Texas, Memphis, Tennessee, Cincinnati, Ohio, and Baltimore, Maryland. They did not experience any difficulty on their trip back East. The airplane was a low wing single-engine aircraft, equipped with two wing type tanks holding thirty gallons of gasoline each. Immediately after he landed at Friendship Airport near Washington, the appellee ordered the gasoline tanks filled, and observed the attendant placing the gasoline in the tanks.

After the inauguration ceremonies, appellee and his wife started their return trip to McAllen, Texas. Prior to take-off, appellee made a routine check of his plane, including checking the landing gear, the oil, draining the gasoline sump and checking the gasoline gauges to determine the amount of fuel on board. Because of crowded conditions at the airport, appellee had some difficulty in getting full weather information on winds aloft before departure, but was able to get sufficient information to know that flying to his destination was safe. He did, however, get complete weather data by radio after he was airborne and away from the Washington area. Appellee filed his flight plan while in flight, stating that he had six hours of fuel on board and that his estimated time en route was five hours. Although he had planned to stop overnight at New Orleans, he knew that he would probably have to stop en route to gas the plane. He had not determined the exact stopping place en route, however, he intended to go as far as he could safely, with the fuel supply that he had on board. As is customary for pilots flying this type of aircraft, the appellee switched from one tank to the other while flying, to keep the aircraft trimmed properly. Otherwise one wing would be heavier than the other because of more fuel in one tank than in the other. When approximately one hundred and twenty miles from Montgomery, Alabama, appellee decided that he would fly on to Montgomery and land there for refueling. He checked his gas gauges and noticed that the left tank had about three gallons of gasoline left, and the right tank indicated half full. He used the remaining gas in the left tank and then switched over to the right tank. Shortly thereafter, the engine quit and the aircraft crashed about forty-three miles from Montgomery, Alabama. The plane was virtually demolished, although the appellee and his wife

escaped serious injury. At the time the airplane crashed, the right hand gas gauge indicated that the right tank was almost half full of gasoline. Later it was determined that the aircraft was completely out of gas.

Appellant's first and second points complain that the trial court erred in overruling their motion for instructed verdict and their motion for judgment non obstante veredicto. Appellant's points three through thirteen complain that the trial court erred in submitting to the jury over appellant's objection Special Issues 9, 10, 11, 12, 13, 14, 15, and 16, because there was no evidence and/or no evidence upon which the minds of reasonable men could differ to sustain the submission of such special issues.

The jury was asked the general issue (Special Issue No. 1) as to whether or not the crash in question was caused by the appellee's negligence. The jury answered "No". Special Issue No. 3 inquired whether or not on the occasion in question appellee failed to visually determine by inspection of the gas tanks the adequacy of the supply of fuel of said plane for his proposed return flight from Friendship Airport en route toward New Orleans, Louisiana. The jury answered "No" in response to this issue. Issue No. 6 requested by appellant was whether or not appellee flew the plane with an insufficient supply of gasoline for his return trip from Friendship Airport en route toward New Orleans. The jury answered "No". In other issues the jury convicted the appellant of contributory negligence. They found that the plane in question was not in good condition when delivered to appellee (Special Issue No. 9); that appellant furnished appellee with a plane with a defective gas gauge (Special Issue No. 10); which was negligence (Special Issue No. 11); and a proximate cause of the crash (Special Issue No. 12). Further, the jury found that the appellant knew, or should have known, of the defective gas gauge (Special Issue No. 13); that appellant failed to warn appellee of such defective gas gauge (Special

Issue No. 14); that such failure was negligence (Special Issue No. 18); and that such negligence was the proximate cause of the crash in question (Special Issue No. 16).

▮ Appellant contends that there was no evidence of any probative value offered by the appellee to show that the crash could have been caused by other than his fault. Appellant argues that where the airplane was delivered to the appellee as bailee in good condition and returned in a damaged state, the law presumes the bailee's negligence or other fault to be the cause. This presumption, referred to and discussed in Trammell v. Whitlock, 150 Tex. 500, 242 S.W.2d 157, which cites with approval the opinion of Judge Leonard Hand in Alpine Forwarding Co. v. Pennsylvania R. Co., Cir.Ct. of App., 2nd Cir., 60 F.2d 734, casts on the bailee the duty of at least producing some evidence showing how the property was injured or that however that was, it was not due to his neglect in order to vitiate the presumed negligence. This presumption, on which the bailor may rely, is a mere rule for the conduct of the trial. It puts upon the bailee the risk of a directed verdict if he does not meet it, but it does no more. Once he has introduced some evidence, the presumption disappears from the case and the evidence must be regarded by the jury as in an ordinary case to determine whether on the preponderance of the evidence the bailee was negligent. Falls Church Airpark Co., Inc. v. Mooney Aircraft, Inc., 254 F.2d 920, 5th Cir., 1958; Mustang Aviation, Inc. v. Ridgway, Tex.Civ.App., 231 S.W.2d 677 (1950); Callihan v. Montrief, Tex.Civ.App., 71 S.W.2d 564, err. ref.; Beck v. Lasater, Tex.Civ.App., 286 S.W.2d 957, ref. n. r. e., 8 Tex.Jur.2d, § 26, p. 102, Aviation; 8 Tex.Jur.2d § 50, p. 264, Bailment. The record clearly shows that evidence was introduced to explain the damage to the aircraft and that the appellee was not negligent or at fault in connection therewith. The record indicates that the appellant chose at the outset of the

trial, as the first witness, to call the appellee under the adverse party rule and to interrogate him extensively as to how the accident occurred. It was the testimony of the appellee and later in the trial, his wife, that the gas gauge indicated that the plane still had approximately one fourth of its total fuel supply available at the time of the crash. There was no evidence that appellee was responsible for causing the defective condition of the gas gauge.

■ Appellant's points of no evidence require the reviewing court to look at the evidence favorable to the verdict. The rule of whether reasonable minds could differ applies, and applies only, to the question of whether the evidence as a matter of law requires a conclusion contrary to the verdict. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

The record of this case shows that the trial lasted more than two weeks. The statement of facts was therefore rather voluminous. The evidence discloses that the defective gas gauge was reported to the appellant several months prior to the use of the plane by the appellee. A certain pilot, Sherman Ihde, flew the same airplane on a long distance flight and observed that one of the gas gauges was defective in that when the recording needle dropped to an indication of approximately half full, it stopped recording at that point and did not register the correct amount of fuel. His recollection was that it was the right hand wing tank gas gauge. The witness Ihde reported it to the Chief Pilot of the appellant company, who did not signify that anything was going to be done to correct the defect. Appellant's manager and vice president stated that to their knowledge nothing was done to check such defective gauge nor was any repair made to it. There was evidence that this type of defect would not show up unless a pilot was switching tanks and travelling a long distance without refueling. Evidence indicated that no other pilot had flown this plane on a long distance flight between the time witness Ihde flew the plane and the appellee.

Appellee testified that he observed the refueling of the plane at the time he landed at Friendship Airport; that he had visually checked the gas gauges prior to departure and that he had sufficient fuel supply to make the trip en route toward New Orleans. He stated he would stop en route to gas the plane. When he crash-landed, some forty-three miles from Montgomery, Alabama, his gas gauge indicated that he had ample fuel to make a fuelling stop at Montgomery, Alabama, had the gauge functioned properly.

■ Appellant seeks to establish appellee's liability by contending that as a matter of law he was guilty of negligence (a) in failing to look into his gasoline tank before taking off from Baltimore, (b) in failing to make proper investigation of the weather en route, including winds aloft (the record indicated a strong head wind) and (c) in failing to plan for an alternate airport or destination, all in violation of the Federal Aviation Agency Air Regulations. None of these specific acts of negligence were plead by appellant and no special issues were requested on the two latter acts. Both the appellee and his wife admitted that they did not open up the fuel caps and look inside the gasoline tanks prior to leaving Friendship Airport. However, Special Issue No. 3, submitted by the appellant, could have been construed as to whether or not the appellee failed to adequately determine the gasoline supply en route toward New Orleans. Appellee did visually check the gas gauges and he did visually observe the filling of the tanks. Several witnesses, although the testimony was conflicting, testified that it was not the custom of pilots flying this type of aircraft to visually inspect the gasoline within the tank prior to take-off. We have carefully reviewed the regulations cited by appellant and none of these regulations require that a pilot make a visual inspection of the fuel tank prior to flight. Such

regulations must be strictly construed and are not to be extended by construction beyond the plain import of their terms. 53 Tex.Jur.2d § 198, p. 304.

The regulations in effect state that the pilot should "visually inspect the airplane *and/or* determine that: * * * the fuel tanks are full or at a safe level of proper fuel." (Emphasis supplied.)

■ Appellee testified extensively about getting sufficient weather information, both prior to his departure and by radio during his trip. He also testified that he considered that there were numerous alternate airports between Washington and New Orleans and that he had taken into account and proposed to refuel at Montgomery, Alabama, as an alternate airport. The aviation rules only require that a consideration of such alternate airport be taken into account by the pilot. We do not find that appellee was negligent as a matter of law.

■ Appellant argues that the aircraft in question had been inspected by a Federal Aviation Agency inspector just the day prior to appellee's departure. Appellant contends that this exonerates him from contributory negligence because the government inspector would not have approved the aircraft had it not been in good condition. We disagree with appellant's contention. The evidence of the inspection was only a part of the evidence as a whole to be considered by the jury in determining the condition of the airplane. There was no evidence offered by the appellant of the nature of such inspection. It would be a reasonable conclusion that can be drawn from the evidence, that the defect in the gas gauge, once established, and not corrected, would not be readily ascertainable without subjecting the aircraft and the gauge to the same type of conditions that would reveal such defect. There was no evidence that this was done.

■ Appellant further contends that appellee was negligent as a matter of law in that he voluntarily relinquished his pilot's license for a sixty-day suspension, admitting thereby his negligence. Appellee testified, without objection, that he had three alternatives, one of which was to surrender his license for sixty days, at which time he would receive it back, or to go to the expense of hiring an attorney and fight the suspension. He chose the surrender of his license as being only slightly inconvenient. Whether a breach of an administrative regulation is negligence per se or only evidence of negligence may be largely a matter of procedural import. The question of whether a person has been guilty of negligence is ordinarily a question for the jury. Where there is a failure to perform a duty prescribed by law it may be negligence as a matter of law and if the act or omission was proved without dispute there would be no question for the jury. McCormick & Ray on Evidence, 1 Tex.Prac. § 5. However, we do not have this situation here. We believe that the charge made by the Federal Aviation Agency and the answer given by the appellee here, does not amount to a conclusive admission but would only, at most, be some evidence of his negligence to be considered by the jury along with the other evidence in the case. C. F. Smith v. United States, 287 F.2d 299, 5th Cir.

■ Although appellant's points are no evidence points, many of his arguments concern the sufficiency of the evidence. After giving the record as a whole careful consideration, we find that there is ample evidence to support the verdict and judgment of the court. Appellant's points one through thirteen are overruled.

Appellant's fourteenth point complains that the trial court erred in refusing to grant its motions for new trial on the grounds of jury misconduct because the jury in its deliberations discussed that appellee must be guilty of "undue and excessive negligence" which had to be proved

"beyond a reasonable doubt," in addition to the fact that "a lot of insurance" was involved in the case.

■ During the hearing on the motion for new trial, juror Windham admitted that he had made some statement during jury deliberations, to the effect that he did not believe that appellee was guilty of excessive or undue negligence, and that appellee's negligence had not been proved beyond a reasonable doubt. When asked about this statement during the hearing on the motion for new trial, juror Windham stated: * * * "I was called to the carpet real quick by three people. One lady sat across the table, the foreman and Mr. Adamsen. I had not hardly got through saying it and I realized I had said something wrong. I verified that remark. I don't remember what it was in the charge, and I said I didn't mean it in that sense of the word. I said that was my phrasing." The record indicates that the foreman, Mr. Shull, called him down and said under the court's charge such statements were not to be considered and that his statements were in error. The foreman stated that he admonished the jury not to consider the same. It is apparent from the record that these statements when made by juror Windham were made as error of phraseology. It was his way of paraphrasing the instructions of the court. Juror Windham simply misconstrued a portion of the court's charge and stated an erroneous interpretation to the other members of the jury. It was held in Whited v. Powell, 155 Tex. 210, 285 S.W.2d 364 that:

"* * * an express misconstruction of the court's charge, which does not bring to the attention of the jury law or facts outside the record, should not be regarded as jury misconduct within the meaning of Rule 327."

Although the statement was made more than once and before the jury answered any of the issues, juror Windham was immediately rebuked and the charge was re-checked and the correct instructions as to the preponderance of the evidence were re-read to the jurors. We conclude that this was not misconduct and that Windham's statements amounted to nothing more than a misinterpretation of the court's charge. Compton v. Henrie, 364 S.W.2d 179, Sup.Ct.1963. See also, Adams v. Houston Lighting & Power Co., 158 Tex. 551, 314 S.W.2d 826; Pete-Rae Development Co. v. State, Tex.Civ.App., 353 S.W. 2d 324, (1962, ref., n. r. e.). See Generally: Pope: "The Mental Operations of Jurors", 40 Tex.Law Rev. 849, and cases cited therein.

■ Juror Adamsen testified in the hearing on the motion for new trial, that he had stated during the jury deliberations that there was "lots of insurance involved in this case." The foreman immediately admonished the jury not to consider the same and that they were not to consider the fact that insurance was involved. During the trial, appellant's general manager and vice-president voluntarily referred to the fact that the airplane in question was covered with insurance. The word "insurance" was mentioned three different times by the appellant's own witness. The foreman of the jury, Mr. Shull, testified that the incident when insurance was mentioned, was, when they got to Special Issue 17 or 18 (the issues that had to do with the cash market value or salvage value) and the jury had already answered all of the special issues concerning negligence and contributory negligence.

We hold that the mention of insurance under this fact situation did not constitute such misconduct as would require a reversal of the judgment based on the jury verdict. Putman v. Lazarus, 156 Tex. 154, 293 S.W.2d 493 (1956); Pittman v. Baladez, Tex.Civ.App., 304 S.W.2d 601 (1957), reversed on other grounds, 158 Tex. 372, 312 S.W.2d 210.

We have given careful consideration to the record on the motion for new trial and

do not find that there was any material act of misconduct on the part of the jury that resulted in probable injury to the appellant. Rule 327, Texas Rules of Civil Procedure.

Appellant's point fourteen is overruled.

Judgment of the trial court is affirmed.