C. M. TREVILLIAN, Appellant,

v.

Richard ALBERT, Appellee.

No. 14992.

Court of Civil Appeals of Texas, San Antonio.

July 14, 1971.

Rehearing Denied July 30, 1971.

**618**

Glusing & Sharpe, Nelson R. Sharpe, Kingsville, for appellant.

Perkins, Floyd, Oden & Warburton, Alice, for appellee.

BARROW, Chief Justice.

C. M. Trevillian brought this suit to recover damages resulting from the destruction of his airplane while in possession of bailee, Richard Albert, M.D., and for rental owed by Dr. Albert under the lease agreement entered into by said parties. Judgment was entered after a jury trial[1] whereby Trevillian recovered judgment against Dr. Albert for the rental in the sum of $320.00, but was denied any recovery for the stipulated value of the destroyed airplane.

Trevillian has timely perfected this appeal from the denial of damages for loss of the airplane and asserts five points of error. Under his first two points, he urges that the trial court erred in not granting his motion for an instructed verdict and motion for judgment non obstante veredicto because there is no evidence to overcome his prima facie or presumptive case of negligence on the part of bailee. His third point is that there is no evidence to support the verdict of the jury. Under his fourth point, Trevillian asserts that the verdict of the jury is factually insufficient. His fifth point complains of the refusal of the trial court to submit his requested issues setting forth other specific acts of negligence which were pleaded and raised by the evidence.

■ Trevillian did not file a motion for new trial, and therefore, we are confined to Trevillian's points complaining of the court's refusal to grant him an instructed verdict or to render judgment non obstante veredicto. Rule 324, Texas Rules of Civil Procedure; St. Louis Southwestern Railway Co. v. Duke, 424 S.W.2d 896 (Tex. 1967); Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887 (1960); Appellate Procedure in Texas, Section 8.2–4.

The evidence is undisputed that the airplane was totally destroyed while in Dr. Albert's possession as the result of a bailment for the mutual benefit of the parties. Dr. Albert, a licensed pilot with about 400 hours flying time, rented the airplane from Trevillian at Kingsville Airport on May 24, 1969, for a trip to Central Mexico to do scientific research in the caves near Sierra de El Abra. On June 2, 1969, his party consisting of himself, his adult son and the son's college friend, took off from Ciudad Valles in the fully loaded airplane for the trip back to Kingsville. After proceeding north about 100 miles and climbing approximately 3,000 feet in elevation, the airplane reached the foothills of a mountain range

---

1. The jury found in the only issue submitted to it that Dr. Albert did not fail to keep a proper lookout.

known as Sierra de Guatemala. In this area, Dr. Albert was interested in looking from the air at a cave called Sotano Verde, so he flew low over this cave several times. On subsequently continuing northbound, the airplane was unable to clear a ridge of the mountain range and crashed. The airplane, which had a stipulated value of $12,500.00 at the time it was rented by Dr. Albert, was totally destroyed.

The parties agree that the applicable rule of law is set forth in Trammel v. Whitlock, 150 Tex. 500, 242 S.W.2d 157 (1951). The Court there quoted with approval from Wigmore on Evidence, 3rd Edition, Section 2508, as follows (150 Tex. 500 at 504–505, 242 S.W.2d at 159): " 'Where goods have been committed to a bailee, and have either been lost or been returned in a damaged condition, and the bailee's liability depends upon his negligence, the fact of negligence may be presumed, placing on the bailee at least the duty of producing evidence of some other cause of loss or injury.' " The Court held (150 Tex. 500 at 505, 242 S.W.2d at 159): "Without prejudice to the burden of proof being at all times on the bailor, the bailor under this latter rule makes a prima facie or presumptive case of negligence by proving the bailment and either the return of the goods by the bailee in a damaged condition, not existing at the time of their delivery to him, or a failure by him to return them at all." See also: Son v. Carter, 450 S.W.2d 110 (Tex.Civ.App.—Eastland 1969, no writ); Zable v. Huff, 432 S.W.2d 717 (Tex.Civ.App.—Amarillo 1968, no writ); Big "D" Auto Auction, Inc. v. Hightower, 368 S.W.2d 881 (Tex.Civ.App.—Eastland 1963, no writ).

Thus, the question before us is whether the record raises a fact issue that the airplane crash was caused by something other than the negligence of Dr. Albert. Dr. Albert concedes that the airplane was in good condition when delivered to him and that he knows of no mechanical or structural defects in the airplane prior to the crash. Cf. Upper Valley Aviation, Inc. v. Fryer, 392 S.W.2d 737 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n. r. e.); Falls Church Airpark Co. v. Mooney Aircraft, Inc., 254 F.2d 920, 5th Cir., 1958. Nor is there any contention that any unusual weather conditions caused the crash. See Yarborough v. Berner, 467 S.W.2d 188, 191 (Tex.1971).

■ Dr. Albert urges, however, that an issue of non-negligence on his part was raised by his own expert medical testimony that the crash was caused by an illusion known as "disorientation" which caused him to believe that the airplane was flying level with the horizon, when actually it was in a climb at maximum throttle when he discovered that he needed to climb a little higher in order to clear the mountain range. Dr. Albert testified that there are three little semicircular canals in the inner ear, back in behind the eardrum, and when you start to climb, you can feel that right away. However, if you stay in a steady climb for maybe ten seconds or longer, then you no longer have the sensation of climbing because the fluid has stopped moving in the semicircular canal.

He testified that the airplane had been in a gradual climb for about twenty miles. He was guiding on the horizon created by the mountain range, and the top appeared to be directly on level with the airplane, and he thought the airplane was flying straight and level. On getting closer to the mountains, he realized it was necessary to climb a bit more to clear safely. Unfortunately, the airplane wouldn't climb any more as it was already climbing the limit, and the mountain was climbing faster than the airplane. He could not turn the plane to the right because of a high peak; and on trying to turn left 180°, the wheels of the plane struck trees on the ridge and crashed.

This explanation by Dr. Albert does not relieve him from negligence in that it wholly overlooks the use of instruments which were specifically designed and installed on the airplane for the very purpose

of preventing a pilot from becoming disoriented. The following instruments on the panel in front of the pilot would have shown that the airplane was in a climb: The air speed indicator would have shown that the airplane was moving just over the stall speed although at full throttle; the altitude or artificial horizon indicator would have shown that the nose of the airplane was in a climb; the altimeter would have shown that the airplane was steadily rising above sea level; the rate of climb indicator would have shown the feet per minute the airplane was climbing; the tachometer would have shown the amount of power the engine was putting out. In addition, the throttle was manually operated and at full throttle was pushed all the way to the instrument panel.

 It is true that the weather was clear, and Dr. Albert was visually flying the airplane as distinguished from instrument flying. However, these instruments were admittedly for use in visual flying and particularly so in this mountainous terrain. It is not a reasonable excuse that Dr. Albert was distracted by flying low to look for caves. He thereby voluntarily placed the airplane, as well as the passengers, in greater danger and was required to use greater vigilance than if he were flying substantially above level terrain. The fact that Trevillian made the same mistake on a subsequent trip while trying to fly low over the area in order to inspect and photograph the crash site does not excuse or justify Dr. Albert's mistake. While the record fully "explains" the cause of the airplane crash, we cannot say that any reason is given other than the negligence of the pilot in not relating the airplane's performance to the geographical requirements. Accordingly, we conclude that the trial court erred in not granting Trevillian's motion for instructed verdict or judgment non obstante veredicto for the stipulated damages.

Dr. Albert asserts by way of cross-points that the trial court erred in overruling his objections and exceptions to the charge of the court. These objections and exceptions all relate to the primary negligence of Dr. Albert, and since we have held the record does not raise a fact issue on this point, it necessarily follows that these cross-points are without merit.

The judgment of the trial court is reformed to provide that C. M. Trevillian recover judgment from Richard Albert for the sum of Twelve Thousand Five Hundred ($12,500) Dollars. In all other respects the judgment is affirmed. The costs of this appeal are taxed against appellee.