MRS. LUCY T. ADAMS ET VIR V. HOUSTON LIGHTING & POWER CO.

No. A-6728. Decided June 4, 1958.
Rehearing overruled July 9, 1958.
(314 S.W. 2d Series 826)

*Liddell, Austin, Dawson & Huggins,* and *Charles R. Vickery, Jr.,* all of Houston, for petitioners.

The Court of Civil Appeals erred in holding that the jury could set aside its answers to special issues because of an erroneous interpretation of the issues; also in its holding that the verdict of the jury in response to the issue on damages was not an excessive verdict, curable by a remittitur. Said court also erred in reversing and remanding this cause because of any remaining execessiveness in the judgment entered, because it is mandatory that any such excessiveness be curd by a remittitur as rquired by Rule of Civil Procedure 440. Whited v. Powell, 155 Texas 210, 285 S.W. 2d 364; Commercial Standard Ins. Co., v. Moore, 144 Texas 371, 190 S.W. 2d 811; World Oil Co. v. Hicks, 129 Texas 297, 103 S.W. 2d 962; Texas Pipe Line Co. v. Hunt, 149 Texas 33, 228 S.W. 2d 151; Carter v. Texarkana Bus Co., 156 Texas 285, 295 S.W. 2d 653.

*Peareson, Scherer & Roberts* and *Walton S. Roberts,* all of Richmond, *Baker, Botts, Andrews & Shepherd, W. V. Ballew, Jr.,* and *Wm. R. Brown,* all of Houston, for respondent.

In reply to petitioner's points, cited Caylat v. Houston, E. &

W. T. Ry. Co., 113 Texas 131, 252 S.W. 2d· 478; Burchfield v. Tanner, 142 Texas 404, 178 S.W. 2d 681.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

In this proceeding the respondent has condemned two parcels of land belonging to the petitioners, one parcel consisting of 2.247 acres as a site for an electric power substation, and the other consisting of 6.982 acres to be burdened with a right of way for transmission lines. It was stipulated that respondent fully complied with all statutory requirements relating to the condemnation of the two easements, and that the only issue of fact to be determined in the trial was the market value of the right of way and easement and the amount of damages accruing to the remainder of petitioners' property. Six special issues were submitted to the jury. The first four related to the value of the two parcels immediately before and immediately after the taking. No question is presented here with reference to those issues or the answers thereto. Our question is limited to a consideration of Special Issues Nos. 5 and 6 and the answers thereto, which read as follows:

"SPECIAL ISSUE NO. 5.

From a preponderance of the evidence what do you find to have been the market value of Mr. and Mrs. Adams' remaining 34 acres of land immediately before July 5, 1955?

Answer in dollars and cents.

$119,000.00."

"SPECIAL ISSUE NO. 6.

Exclusive of the increase in value, if any, and decrease in value, if any, by reason of benefits or injuries received by Mr. and Mrs. Adams in common with the community generally and not peculiar to them and connected with their ownership, use and enjoyment of the particular tract of land across which the easements have been condemned and taking into consideration the uses to which the easements are to be subjected, what do you find from a preponderance of the evidence was the market value of Mr. and Mrs. Adams' remaining 34 acres of land immediately after the taking of the easements condemned on July 5, 1955?

Answer in dollars and cents.

$25,500.00."

By subtracting the answer to Issue No. 6 from the answer to Issue No. 5 the result is $93,500.00, which the verdict on its face fixed as the damages to the land not taken or burdened with an easement.

On motion for new trial, respondent charged that the answer of the jury to Special Issue No. 6 was the result of unanimous mistakes, confusion, and misunderstanding. After hearing the testimony of three of the jurors, the trial court overruled the motion, but required a remittitur of $68,000.00, reducing the damages to the 34-acre tract remaining from $93,500.00 to $25,-500.00. Adding that amount to the damages found in answer to the first four issues, the court then rendered judgment for petitioners for the whole. The Court of Civil Appeals reversed that judgment and remanded the case for a new trial. 309 S.W. 2d 537.

On the hearing of the motion for new trial three jurors testified generally to the effect that the jury misunderstood the meaning of Special Issue No. 6, thinking that it called for the amount of damages that should be awarded for the remaining 34 acres, and not for their value after the taking. We think that the excerpts set out below from the testimony of two jurors fairly reflect the proceedings in the jury room in connection with the answer to Special Issue No. 6.

"Q. And you were instructed to write $25,500 to Special Issue No. 6?

A. Yes, sir.

Q. Did each juror have an opportunity to read those issues?

A. Yes, sir.

Q. And to determine what they meant?

A. Yes, sir.

Q. Was there any discussion in the jury room as to the meaning of the different issues?

A. On that No. 6, yes, plenty of it.

Q. What was the discussion in the jury room about Special Issue No. 6?

A. We knew it was a tricky question, and we were trying —well, we didn't write these answers, we wrote them on a scratch pad, and then went back and put them on this piece of paper.

Q. What was the discussion about Special Issue No. 6?

A. It was damage that was done to the property.

Q. As to whether it was inquiring as to the amount of damages?

A. The amount of damages that was done to the remaining land.

Q. Was there any discussion as to whether that was what it inquired about?

A. That is what they thought the question was about, yes, sir.

Q. You thought Question 6 asked how much was the damage?

A. Yes.

Q. And you filled in there what you thought was the amount of the damage?

A. Yes

Q. But what you did ,if you made any mistakes, it was in construing Issue No. 6?

A. That is right."

Another juror gave the following testimony:

"Q. Did you ever take a vote on answering Special Issue No. 6 any other figure?

A. Yes, we did, but I couldn't tell you the figure now.

Q. Did you ever vote on answering it $93,500.00?

A. No.

Q. You never voted on answering it that high, did you?

A. No, sir.

Q. Now, you say you may have made a mistake, and what is the nature of the mistake you think you may have made?

A. Well, I think that we should have subtracted $93,000.00 from $119,000.00, giving you the total of $25,500.00 damages.

Q. Why did you make that mistake?

A. Well, I don't know.

Q. Was it because you misunderstood Issue 6?

A. Most likely.

Q. A misconstruction of the meaning of Special Issue No. 6?

A. I would think so."

The Court of Civil Appeals held that the answer of the jury to Special Issue No. 6 was not a true answer to that issue, and that the trial judge in suggesting the remittitur, being the difference between $93,500.00, the amount of the damages derived from the verdict, and $25,500.00, was in effect substituting his finding for that of the jury.

■ A trial court is authorized to set aside a jury verdict which is the result of a unanimous mistake in the nature of a clerical error, but not when the verdict results from a misinterpretation of the evidence or the charge of the court. The leading case on this question in this jurisdiction appears to be Caylat v. Houston E. & W. T. Ry. Co., 113 Texas 131, 252 S.W. 478. To the same effect are Burchfield v. Tanner, 142 Texas 404, 178 S.W. 2d 681; Whited v. Powell, 155 Texas 210, 285 S.W. 364; and City of Carrolton v. Rawlins, 291 S.W. 2d 955, wr. ref.

■ The evidence on the motion for rehearing does not establish

that a unanimous mistake in the nature of a clerical error was made. To the contrary it discloses that the mistake was not in transcribing the verdict, but arose from a misunderstanding of the court's charge. From this we conclude that the trial court did not err in refusing to set aside the jury's answer to that issue; that the answer to Issues Nos. 5 and 6 must be accepted as the verdict; and that by the verdict the damages to the 34 acres was found to be $93,500.00.

This brings us to a consideration of the question of whether a judgment rendered upon the verdict of the jury awarding petitioners $93,500.00 would have been an excessive judgment which could be cured by a remittitur. The trial court required a remittitur of $68,000.00, and, subtracting that amount from $93,500.00, rendered judgment for $25,500.00 as damages to the 34-acre tract. We have concluded that by so doing the court did not err. Texas Pipe Line Co. v. Hunt, 149 Texas 33, 228 S.W. 2d 151, and Houston Belt & Terminal Co. v. Lynch (Comm. App.), 221 S.W. 959.

It is contended that there was neither pleading nor evidence supporting the trial court's judgment. Respondent relies on Burchfield v. Tanner, 142 Texas 404, 178 S.W. 2d 681. The facts of that case are somewhat involved, but we based our opinion in that case on the ground that it could not be ascertained from the record which of two answers of the jury was in error. Our opinion in Texas Pipe Line Co. v. Hunt, supra, distinguishes that case from one like the instant one in this language:

"The difference between that case [Burchfield] and the present one is substantial. In the former, on the basis of the pleadings and evidence, there was a conflict in the two findings as to lint cotton and cotton seed respectively. There was in a sense no verdict at all, because one finding was as good or bad as the other, yet because of the clearly erroneous ratio between them, both could not stand. Such a verdict is not merely an 'excessive' verdict for remittitur purposes."

Respondent also contends that since there was no evidence that the after value of the property was as low as $25,500.00, nor any evidence that the difference in value was as high as $93,-500.00, the verdict cannot stand. A like contention was rejected in Houston Belt & Terminal Co. v. Lynch, supra. We can find no distinction between that case and the instant one.

■ It appears that the trial court in the instant case, after hold-

ing that the answer to Special Issue No. 6 must be considered as the jury's estimate of the value of the 34 acres after the taking, and not as a finding of the jury that that amount represented the damages suffered by petitioners on that account, has, nevertheless, by requiring the remittitur, rendered judgment

that that sum represents the damages suffered. It seems true that the court in determining the amount of the remittitur to be required arrived at the amount of $68,000.00 by adopting the jury's answer to Special Issue No. 6 as its estimate of the damaes sustained by petitioners, thus using that answer for two purposes, but we can perceive of no reason why the court in determining the amount of the remittitur might not resort to that method. The case being one of an excessive verdict, there is no rule prescribing the manner by which the court determines the amount of remittitur. The amount of damages arrived at by the court in that manner, $25,500.00, was approximately one-half of the damages pleaded and one-half of the damages having support in the evidence. We cannot, therefore, hold as a matter of law that the court erred in the amount of remittitur required. Our conclusion is that this is a case of excessive verdict, and that the trial court did not err in requiring a remittitur of $68,000.00. The judgment of the Court of Civil Appeals will be reversed.

Respondent presented a point in the Court of Civil Appeals that the judgment was excessive even after the remittitur was filed. That court in its opinion stated that the award of the jury less the remittitur still leaves the verdict excessive, but since that court reversed the trial court's judgment, it did not fix the amount of the excessiveness. The case will, therefore, be remanded to the Court of Civil Appeals in order for that court to pass upon the question of excessiveness, and, if deemed proper, to suggest further remittitur. Carter v. Texarkana Bus Co., 156 Texas 285, 295 S.W. 2d 653.

The judment of the Court of Civil Appeals is reversed, and the cause is remanded to that court for further proceedings not inconsistent with this opinion.

Associate Justice Garwood not sitting.

Opinion delivered June 4, 1958.

Rehearing overruled July 9, 1958.