**KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant,**

v.

**Homer R. SIMMONS, Appellee.**

No. 6490.

Court of Civil Appeals of Texas.

Beaumont.

Oct. 26, 1961.

Rehearing Denied Nov. 15, 1961.

Orgain, Bell & Tucker, Beaumont, for appellant.

Jones, Brian & Jones, Marshall, for appellee.

STEPHENSON, Justice.

This is a suit for personal injuries brought by Homer R. Simmons against the Kansas City Southern Railway Company, under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. Judgment was rendered for appellee Simmons in the amount of $139,615 based upon jury findings that appellant Railway Company was guilty of negligence and appellee was not contributorily negligent. The jury found appellant negligent in the following respects: (1) In failing to furnish a safe place to work. (2) In failing to provide sufficient help to plaintiff in removing the gate from under the train. (3) In dropping a portion of the gate without warning.

Appellant contends there was no evidence to support the submission of Special Issue No. 2, relating to the failure to supply appellee sufficient help to remove the gate from the train. This is a question of law and is to be tested on appeal by considering only the evidence favorable to verdict and disregarding all other evidence. This incident occured when appellee attempted to raise the end of a gate post which had become lodged beneath the train. Through a request for admission, it was proved that appellant's operating Rule No. 107 provided that all persons employed on a train must obey the instructions given by the conductor. The evidence also showed that if additional help was needed to dislodge the gate, the sole right and duty to provide that help was on the conductor. The conductor told appellee that if they could raise the gate they could slip it out from under the train. When appellee attempted to raise one end of the gate he sustained an injury to his back. The conductor testified he had tried to move the gate himself but could not move it before the attempt was made by appellee. It is clear in this state, the law imposes upon the employer the duty to exercise reason-

able care in providing for an employee adequate help in the performance of work required of him. The duty is nondelegable and continuous, the rule being in principle the same as that requiring the employer to furnish his employee with safe instrumentalities and a safe place to work. Western Union Telegraph Co. v. Coker, 146 Tex. 190, 204 S.W.2d 977. The jury undoubtedly concluded the conductor, as a reasonable prudent person, should not have asked appellee to lift the gate without furnishing additional help to accomplish this task. The submission of this issue was supported by the evidence.

Appellant also contends there was insufficient evidence to support the submission of Special Issue No. 2, discussed in the preceding paragraph. This court has considered all of the evidence in this record, both favorable and unfavorable to the finding of the jury, and hold the point is without merit.

■ In other points appellant complains of a definition given in connection with Special Issue No. 1, and of the lack of evidence and insufficiency of the evidence to support the submission of Special Issues Nos. 1, 1–A, and 3–B. If there was any error in the submission of this definition and these issues it was harmless error because the findings of the jury in answer to Special Issues Nos. 2 and 2–A were sufficient to support the judgment. Texas & N. O. Ry. Co. v. McGinnis, 130 Tex. 338, 109 S.W.2d 160.

■ Appellant complains of the size of the verdict in the amount of $139,615.00, contending it is grossly excessive. The San Antonio Court of Civil Appeals, in an opinion by Justice Norvell, clearly sets forth the duty of the appellate court in its examination of this question in Kimbriel Produce Co. v. Webster, 185 S.W.2d 198, 202, as follows:

"The record of the evidence here undoubtedly supports the award of a large sum of money as damages. The determination of the amount rests primarily with the jury, and there is no set formula applicable to cases of this character whereby the exact amount can be measured or ascertained. The amount of the award is not, however, free from control or revision by either the trial court or this Court. 'The doctrine is now generally accepted that the verdict of the jury is subject to the supervision of the court whether such verdict is too large or too small.' * * * 'Precedents are helpful and of some value in determining whether damages awarded for similar personal injuries are or are not excessive or inadequate,' * * * although it be conceded that no two injuries are alike in all particulars and do not have the same consequences or results insofar as damages are concerned. It is recognized that 'there should be a reasonable uniformity as to the amount of verdicts and judgments in the various cases.' "

Appellee was 46 years of age at the time of injury, and 48 years old at the time of trial, with a life expectancy of 22.88 years. He engaged in work at cleaning and pressing, farming and in the oil field before his employment in 1942 with appellant. Appellee is a high school graduate with one semester of college work. In 1958, his last full year of work he earned a little over $7,000. On the date of the incident, he received two injuries to his back, one while trying to lift the gate and the other when the gate was suddenly dropped. His back has pained him almost continually since that time. He began to receive medical treatment consisting of heat treatment, bed rest and traction. Later he was given a brace to wear. His back continued to hurt and some two months after the injury he underwent a major surgery to remove a disc. He remained in the hospital about 22 days and went home to bed for an additional two weeks. There was no pain for two weeks following the operation, but then it returned and still existed at the time of trial. His testimony showed he worked for 9 days in a liquor store but quit because he could not move cases of liquor and beer.

He testified he could not sit too long in one spot and could not stand on his feet too long. He tried hunting several times but could not walk long. He had not seen a doctor for about 5 months before the trial.

Dr. Heinz Faludi was the only doctor to testify. His testimony was given by deposition, the direct portions offered by appellee and the cross examination by appellant. Dr. Faludi testified as to the history of appellee, including the operation removing the ruptured disc, which was performed by another doctor. He found the scar left by the incision, and tenderness over the lumbo-sacral region; weakness and atrophy in the right calf; lumbar lordosis reduced; motion of lumbar spine restricted; tenderness on the lumbo-sacral joint; tenderness over the right medium gluteal muscle; and radiculitis involving the S5 and L1 nerve root on the right. He recommended to appellee conservative treatment and if no relief, then a re-exploration operation to free the patient of the scar formation and possibly a posterior rhizotomy, which is cutting the pain fibers of the nerves, if the root was irreparably damaged. Later, he gave appellee a myelogram, which was his second, and found a questionable defect at L4 which he said was more likely old scar formation than new herniation. He stated: "I can't make any definite promise as to the success of the re-operation." He was asked if appellee was able to engage in work which required sustained heavy lifting, or stooping and bending, that sort of thing, heavy manual labor, to which he answered: "I do not believe so, not in the condition he is in now." He testified: "I think an operation would stand a chance, probably better than an even chance to offer him some relief." "I think the pain is fairly well localized and I think it would stand a fairly good chance of success." He was asked the question, "In other words, you may give him enough relief so he can engage in a remunerative employment, assuming that within reasonable probability that your operation is successful?" He answered, "Yes, sir." Also he testified: "Well, I think we would stand a reasonably good chance that the man could be improved and could be freed of some of his pain, but I am not quite sure that he will definitely be able to go to heavy manual labor. I think he should be able to do moderate labor fairly well." Also: "I would feel he is stationary and with conservative treatment I very much doubt that he will substantially change." Also: "I believe he would not be in the good risk group any more. I think he would be probably somewhat in the poor risk group." At the time of trial appellee had declined a second operation.

■ This court will apply the rule set forth in Wilson v. Freeman, 108 Tex. 121, 185 S.W. 993, 994: "All the Court of Civil Appeals can do, and all that is required of it to do * * * is to exercise its sound judicial judgment and discretion in the ascertainment of what amount would be reasonable compensation for the injury sustained, and treat the balance as excess * * * (Having) decided upon an amount that would be reasonable compensation * * * it should authorize a remittitur of the excess * * * in accordance with its sound judgment." The Supreme Court cited this rule in the case of Flanigan v. Carswell, 159 Tex. 698, 324 S.W.2d 835.

It is unnecessary for us to cite the multitude of cases which involve the amount of damages awarded for injuries more or less similar to those sustained by appellee here. They will be found collated in Houston Belt & Terminal Ry. Co. v. Burmester, Tex. Civ.App., 309 S.W.2d 271 and 17 Tex.Jur. 2d, sec. 350 at p. 425.

■ After a careful consideration of the evidence and these authorities along with all others cited by appellee on this question, we have come to the conclusion that the verdict of the jury is excessive to the extent of $40,000. We regard the record as presenting a case of considerable past and probable future physical pain and mental suffering. We also have taken into consideration the decreased value of

the dollar at this time. We do not consider appellee as having been totally disabled as in the case, City of Fort Worth v. Barlow, Tex.Civ.App., 313 S.W.2d 906, in which the plaintiff was permanently paralyzed from the shoulder down, nor the case of Texas & N. O. Ry. Co. v. Flowers, Tex.Civ.App., 336 S.W.2d 907, in which plaintiff sustained injuries requiring amputation of both legs and one arm. Upon the record, it is our duty to suggest a remittitur in accordance with Rule 440, Texas Rules of Civil Procedure.

If appellee will file in this court, within two weeks from the date of this judgment, a remittitur of $40,000, the judgment will be reformed and affirmed for the sum of $99,615.00; otherwise the judgment will be reversed and the cause remanded.

The judgment is affirmed conditionally.