JOHNSTON TESTERS, a Division of Schlumberger Well Surveying Corporation, Appellant,

v.

Jose RANGEL, Appellee.

No. 14686.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 6, 1968.

Rehearing Denied Jan. 8, 1969.

Perkins, Floyd, Davis & Oden, L. H. Warburton, Alice, for appellant.

William R. Edwards, David L. Perry, Lee Arnett, Corpus Christi, Arnold Garcia, Alice, Guy Allison, Corpus Christi, for appellee.

KLINGEMAN, Justice.

The opinion handed down on September 24, 1968, is withdrawn and the following is substituted.

Third party action by Jose Rangel, herein referred to as plaintiff, an employee of Sam Howell Drilling Company, against Johnston Testers, an oil field specialty company, herein referred to as defendant, for damages for injuries sustained by plaintiff while a specialized bottom-hole test was being performed on an oil and gas well being drilled by Sam Howell Drilling Company. Trial was to a jury and judgment entered for plaintiff in the total amount of $74,598.00, which included the sum of $56,160.00 for diminished capacity to work or earn money in the future; $3,600.00 for future medical services; $7,488.00 for diminished capacity to work or earn money from the time of the accident to the date of the trial; $6,500.00 for pain and suffering, and $850.00 for medical services rendered to plaintiff up to the time of the trial.

Plaintiff was employed as a roughneck for Sam Howell Drilling Company and on the occasion of the accident was working for Howell on a well being drilled near Driscoll in Nueces County, Texas. Defendant was employed by Howell to perform a bottom-hole test on such well, and portions of the written contract in connection therewith were introduced into evidence. C. W. Belcher, an employee of defendant, was sent out to run the test. Such tests are used to determine flowing and bottom-hole pressure in a particular zone in the well and are performed with a specialized testing tool furnished by defendant. The testing tool is similar in appearance to a piece of drill pipe and is composed of different sections of pipe short enough to be hauled in a pick-up truck. Plaintiff was injured while the test tool was being prepared to run the test when a "sub" fell from approximately 20 feet above him, striking him on the back and shoulders. A "sub" is a section of pipe which is larger in diameter than the test tool and is utilized in picking up the test tool and lowering it into the well, and in such process the sub rests on the elevators of the rig like a shoulder. The elevators are operated by the driller of the drilling crew, and they pick up and lower the test tool into the well. The sub is ordinarily screwed on the test tool by tongs, which are like pinchers and which can exert a large amount of pressure, but in some instances such subs are screwed on by hand. While the test tool was being assembled and when the test tool was raised approximately twenty feet in the air, the sub "backed off" (became unscrewed from the test tool) and fell striking Rangel.

Defendant first complains of error of the trial court in refusing to submit its special issue that the driller of the Howell crew allowed the elevators to apply pressure on the sub and that this was the sole proximate cause of the accident.

It is undisputed that the sub fell because of back-off, and the testimony establishes that back-off can only occur in three ways, to-wit: (1) failure to properly tighten the sub; (2) failure to unlatch the hook on the traveling block; (3) applying pressure on the lift sub. It is defendant's

contention that the probable cause of the back-off was pressure being applied to the sub by the elevators as a result of failure to slack off. In support of this contention, defendant relies on testimony that failure to properly slack off the elevators could cause back-off and that such failure to slack off could have occurred in connection with this accident. However, there is no testimony in the record that such failure to slack off did occur. Belcher testified that he had observed the driller slack off when the test first started; that every time he looked, the elevators were properly slacked off, and that he never saw the driller fail to properly slack off the elevators. No witness who testified saw the driller fail to slack off the elevators at any time. There was testimony that a sub will not back-off if properly tightened. The testimony at the most showed only that the failure to slack off could cause back-off under some circumstances and that failure to slack off could have occurred. Testimony that something could have possibly occurred is no evidence that it did occur. Leatherwood Drilling Co. v. TXL Oil Corporation, 379 S.W.2d 693 (Tex.Civ.App.— Dallas 1964, writ ref'd n. r. e. In Ft. Worth Belt Ry. Co. v. Jones, 106 Tex. 345, 166 S.W. 1130 (Tex.Sup.1914), it was stated that "A presumption of fact cannot rest upon a fact presumed. The fact relied upon to support the presumption must be proved. 'No inference of fact should be drawn from premises which are uncertain. Facts upon which an inference may legitimately rest must be established by direct evidence, as if they were the facts in issue. One presumption cannot be based upon another presumption.' 16 Cyc. 1051; Mo.Pac.Ry. Co. v. Porter, 73 Tex. 304, 11 S.W. 324." See also Rounsaville v. Bullard, 154 Tex. 260, 276 S.W.2d 791 (1955). Under the record, the trial court did not err in failing to submit defendant's requested issue complained of in its first point of error.

■ By its sixth and seventh points of error, defendant complains that there is no evidence, or insufficient evidence, to support the jury's finding that Belcher's failure to tighten the joint was the proximate cause of plaintiff's injuries. The jury found that Belcher failed to properly tighten the joint and defendant does not complain of the finding. There is testimony that while subs are ordinarily tightened by tongs, in some instances they are tightened by hand. There was testimony that on the occasion of the accident Belcher tightened the sub only by hand. This testimony was contradicted by Belcher, who testified that tongs were used and that if the subs were put together only by hand they would not be tight enough and they wouldn't be safe to pick up. There was also testimony that a sub that wasn't properly tightened would back off, and that even with the elevators properly slacked off a sub will back off if it is loose. While the testimony is in some respects conflicting, the jury's findings are sufficiently supported by the evidence.

■■ Defendant pleaded as an alternative defense that plaintiff was a special or borrowed employee of defendant and that his only remedy was provided under the Workmen's Compensation Law, and complains on this appeal that the trial court erred in excluding evidence of its right to control Howell's employees and in failing to submit to the jury defendant's requested issues on borrowed servant. We find no error of the trial court in this regard. It is to be remembered that this is a third party action where the defense is that the employee who has been injured has become the borrowed servant of another and that his exclusive remedy is under the Workmen's Compensation Act. It thus became incumbent on defendant to prove that the person injured was entitled to workmen's compensation benefits. One of the essential elements of proof is that workmen's compensation insurance existed. There is no evidence in the record that defendant was a subscriber under the Workmen's Compensation Law, and defendant did not

offer any proof, either by bill of exception or otherwise, that it carried workmen's compensation insurance. In this connection, see Camco, Incorporated v. Evans, 377 S.W.2d 703 (Tex.Civ.App.—San Antonio 1963, writ ref'd n. r. e.). In view of defendant's failure to prove or offer proof of an essential element of such defense, the trial court did not err in refusing to submit defendant's requested issues on borrowed servant.

■ By supplemental point of error, defendant urges that if this Court were to hold that plaintiff was not a special or borrowed servant of defendant the legal effect of the contract between Howell and defendant was to impose a licenser-licensee relationship, and that under these circumstances there would be no duty to plaintiff. Under the record in this cause, we do not find any merit in this contention.

■ Defendant also complains of error of the trial court in refusing to submit to the jury its defense of volenti non fit injuria. Volenti is an affirmative defense based on a showing that the injured person has assented or agreed to the injury by choosing to encounter a known danger. It requires proof that plaintiff has knowledge of facts constituting a dangerous condition and that he voluntarily encountered the same as a result of intelligent choice. J. & W. Corporation v. Ball, 414 S.W.2d 143 (Tex.Sup.1967); Ellis v. Moore, 401 S.W. 2d 789 (Tex.Sup.1966); Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex. Sup.1963); Wood v. Kane Boiler Works, 150 Tex. 191, 238 S.W.2d 172 (1951). The evidence viewed in the most favorable light to defendant shows only that there was some danger involved in running this type of test, but there is also some danger involved in any type of work on an oil rig. The evidence discloses that it was plaintiff's job, on this occasion, to operate the tongs used to tighten the lower joints of the test tool, and at the time of the accident he was so doing, squatted down near the rotary looking at the joint that he was working on. The sub fell from some twenty feet above him and hit him on the back and shoulders. Plaintiff testified that he did not see the sub fall and that he was not aware that it had fallen until it hit him. Plaintiff further testified that he believed a properly tightened sub would not fall, and that he asked Belcher if the sub was tight and Belcher told him that it was. There was testimony that it is not possible to determine whether a sub is properly tightened by merely looking at it. There is no evidence that plaintiff knew of the defect which caused his injury or that he voluntarily encountered such dangerous condition. The issue of volenti was not raised by the evidence and the trial court correctly refused to submit such defense to the jury.

■ Defendant also asserts that the trial court erred in restricting cross-examination as to the amount of work expenses and drug expense in connection with certain income tax reports of plaintiff. Defendant offered to introduce such income tax returns into evidence but the trial court refused to allow the introduction thereof. It was stipulated that plaintiff's earnings for each year in question were certain amounts as shown by the income tax returns.[1] Defense counsel did not attempt to question plaintiff as to the existence of such drug bills and work expenses and the amount and nature thereof, and we do not find, under the record, that defendant's right of cross-examination was in any way restricted in this regard.

■ Defendant asserts that portions of the argument of plaintiff's counsel were an appeal to sympathy calculated to cause rendition of an improper judgment; that

1.

| | | |
|---|---|---|
| 1962 | ------------------- | $2,823.00 |
| 1963 | ------------------- | 1,922.09 |
| 1964 | ------------------- | 2,431.60 |
| 1965 | ------------------- | 1,414.80 (Year of the injury.) |

the arguments of plaintiff's counsel on diminished earning capacity were improper and prejudicial, and that the cause should be reversed and remanded because of improper jury argument. One particular portion of the argument complained of pertains to certain remarks of plaintiff's counsel to the general effect that this was plaintiff's "last day in court." No objection was made by defense counsel as to this particular argument and no request was made to instruct the jury to disregard such argument. Plaintiff contends that defendant's point had been waived by failure to object. If the argument is curable, both objection and request to disregard are necessary. Younger Brothers, Inc. v. Myers, 159 Tex. 585, 324 S.W.2d 546 (1959); Wade v. Texas Employers' Ins. Ass'n, 150 Tex. 557, 244 S.W.2d 197 (1951). After a careful review of such argument, we do not regard it as improper. Somewhat similar arguments were held to be proper by this Court in Texas Employers' Ins. Ass'n v. Hadley, 289 S.W.2d 809 (1956, no writ); and Pressley v. Smith, 288 S.W.2d 893 (1956, writ ref'd n. r. e.). Defendant also complains of certain portions of the argument of plaintiff's counsel on pain and suffering. No objection was made to this argument. While we do not regard such argument as improper under the record, even if it be so regarded, we do not regard it as being beyond correction by instruction if a proper objection and request to disregard had been made. Defendant also complains of the argument of plaintiff's counsel on diminished earning capacity as being improper, and in particular of a statement by plaintiff's counsel that the cost of living is going up. Prior to such argument counsel for defendant argued that if plaintiff was awarded a sum of $90,000.00, that at 6% interest this would amount to an income of $5,400 a year, and that if plaintiff was awarded $52,000, the present cash value was around $30,000. Plaintiff's counsel thereafter stated that counsel for defendant didn't tell the jury that the cost of living goes up, specifically citing certain items showing

increases, and that the cost of living increase eliminates any interest back or deductions. No objection was made to this argument. It has been held in a number of cases that the diminished purchase power of the dollar is a matter of common knowledge and the jury is entitled to consider same. Texas Consolidated Transportation Co. v. Eubanks, 340 S.W.2d 830 (Tex.Civ. App.—Waco 1960, writ ref'd n. r. e.); City of Teague v. Stiles, 263 S.W.2d 623 (Tex.Civ.App.—Waco 1953, writ ref'd n. r. e.); City of Dallas v. Hutchins, 226 S.W. 2d 155 (Tex.Civ.App.—Amarillo 1949, writ ref'd n. r. e.); Dallas Railway & Terminal Co. v. Bishop, 203 S.W.2d 651 (Tex.Civ. App.—Amarillo 1947, writ ref'd n. r. e.); Younger Bros., Inc. v. Marino, 198 S.W.2d 109 (Tex.Civ.App.—Galveston 1946, writ ref'd n. r. e.). The argument complained of was made after defendant had injected a "6% interest rate" into the case with no evidence in the record as to current rates of interest on money. Under the circumstances, plaintiff's argument was a fair reply to defendant's argument. In any event, we do not regard such argument as so inflammatory or erroneous that proper instruction to the jury would not have cured it.

From the review of the entire argument of counsel, we do not believe that any of the arguments complained of were reasonably calculated to cause or probably did cause the rendition of an improper verdict. None of the complaints reflect harmful error.

■■■■ The defendant also complains that the jury findings as to lost earnings and diminished capacity to work are against the overwhelming weight and preponderance of the evidence, not based on present cash value, manifestly too large, and that the trial court erred in failing to grant defendant's motion for remittitur in an amount of at least $40,000.00. Plaintiff was 47 years old at the time of the trial and had

a life expectance of 25.7 years. He was an experienced oil field worker, having been engaged in oil field work for approximately twenty years. He had worked as a roughneck for Howell Drilling Co. for approximately five years, and there was testimony that he was a good worker, dependable and steady. There is medical testimony that his injuries are painful and disabling and permanent, and that in the future he will never be able to do hard labor of the type that he was doing.

This Court said in Green v. Rudsenske, 320 S.W.2d 228, 235 (1959, no writ):

"The law is settled that before an appellate court will disturb a judgment rendered upon a jury verdict, on the grounds that such verdict is excessive, there must be circumstances tending to show that it was the result of passion, prejudice or other improper motive, or that the amount fixed was not the result of a deliberate and conscientious conviction in the minds of the jury and court, or so excessive as to shock a sense of justice in the minds of the appellate court. 13 Tex.Jur. 278, Damages and authorities cited. The measure of damages in a personal injury case cannot be measured by a mathematical yardstick. Each case must be measured by its own facts and considerable discretion and latitude must necessarily be vested in the jury. Bee Line Coaches v. Folterman, Tex.Civ.App., 207 S.W.2d 986. And in determining whether or not a verdict is excessive, the evidence in support of the award must be viewed, of course, in the light most favorable to the award. Hill & Hill Truck Line v. Van Schoubroek, Tex.Civ. App., 233 S.W.2d 167; Texas Motor Coaches v. McKinney, Tex.Civ.App., 186 S.W.2d 714."

Defendant's complaints as to the jury findings appear to be primarily based on the construction of the mental process by which the jury arrived at its answers. The mental process by which the jury determined the amount of the verdict is ordinarily not cognizable by an appellate court. Sumners Road Boring, Inc. v. Thompson, 393 S.W.2d 690 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n. r. e.); Texas Consolidated Transportation Co. v. Eubanks, 340 S.W.2d 830 (Tex.Civ.App.—Waco 1960, writ ref'd n. r. e.).

As reflected by the earnings shown on his income tax returns, plaintiff's 1962–1965 earnings averaged $2,324.49 a year, and if this amount is multiplied by his life expectance of 25.7 years, it would aggregate $59,739.39. In addition, the testimony shows that plaintiff was making $1.80 an hour at the time of his injury, with time and a half overtime. Without considering overtime, his weekly wages for a forty-hour week would be $72.00, and based upon a fifty-week work year this would amount to $3,700.00 a year. If this figure is multiplied by his life expectancy, the amount is considerably higher than that awarded by the jury. The damages awarded by the jury for lost earnings and diminished capacity to work are amply supported by the evidence and are not excessive under the evidence and the law.

We have carefully reviewed the entire record in this case and find no reversible error of the trial court. All of defendant's points of error and supplemental points of error have been considered and are overruled. The judgment of the trial court is affirmed.

In view of the affirmance of the trial court's judgment herein, we do not deem it necessary to pass on plaintiff's cross-points that the court erred in excluding plaintiff's offer of testimony of Sam Howell as to differences in subs and that the trial court erred in overruling plaintiff's motion for leave to amend to include in his petition an allegation that defendant was negligent in using the wrong kind of sub.