**WHARF CAT, INC., et al., Appellants,**

v.

**Clarence E. COLE and Wilma Cole, Appellees.**

**No. 1282.**

Court of Civil Appeals of Texas, Corpus Christi.

April 13, 1978.

Rehearing Denied and Supplemental Opinion on Filing Remittitur May 18, 1978.

Second Rehearing Denied June 8, 1978.

J. Robert McKissick, R. W. Woolsey, Kleberg, Mobley, Lockett & Weil, Corpus Christi, for appellants.

Jack K. Dahlberg, Jr. Guy Allison, Corpus Christi, for appellees.

OPINION

BISSETT, Justice.

This is a suit for damages brought by Clarence E. Cole and wife, Wilma Cole, for personal injuries sustained by them while passengers aboard the vessel WHARF CAT, which was owned and operated by the defendants Wharf Cat, Inc., William J. Sheppard, Edward Sheppard, and Anton T. Mathews, Jr. Trial was to a jury. All issues were answered against defendants. Judgment in the amount of $162,250.00 was rendered against the defendants, who have appealed.

Defendants do not complain of the jury's findings of negligence which proximately caused plaintiffs' injuries. The only complaints on appeal are directed to the jury's answers to Special Issue No. 8, subsections (a) through (f). The jury, in its answers to the several elements of damages inquired about, found that the following amounts of money would reasonably compensate Cole for his injuries, to-wit:

8(a) $50,000.00 for "physical pain and mental anguish in the past";

8(b) $25,000.00 for "physical pain and mental anguish which, in reasonable probability, he will suffer in the future";

8(c) $45,000.00 for "loss of earning capacity in the past";

8(d) $25,000.00 for "loss of earning capacity which, in reasonable probability, he will sustain in the future";

8(e) $4,000.00 for "physical impairment in the past";

8(f) $10,000.00 for "physical impairment which, in reasonable probability, he will sustain in the future".

The awards by the jury are attacked by "no evidence", "factual insufficient evidence" and "against the great weight and preponderance of the evidence" points. In addition, the defendants complain that each award is "too large so as to be inequitable and requires that the Court (of Civil Appeals) direct a remittitur of the same in whole or in part".

The defendants' prayer, as stated in their brief, reads:

". . . Defendants pray that the Judgment of the Trial Court be modified to provide that Plaintiffs recover no more than the sum of $19,250.00, and as so modified, affirmed."

We will review the record in its entirety. The "evidence" points will be disposed of in accordance with the guidelines set out by Justice Calvert in 38 Texas L.Rev. 359. In disposing of the "remittitur" points, an appellate court, in determining whether the amount of damages awarded by a jury is excessive, considers only the evidence that is favorable to the award. *Sunset Brick & Tile, Inc. v. Miles,* 430 S.W.2d 388 (Tex.Civ.App.—Corpus Christi 1968, writ ref'd n. r. e.). On appeal, the findings by the jury will not be disturbed on the ground of "excessiveness" if there is any probative evidence to sustain the award, unless the record shows that the minds of the jurors were so controlled by passion, prejudice or bias as made them unwilling to consider the case on its merits, to the end result that the award is so excessive that it shocks the conscience of the Appellate Court. *World Oil Co. v. Hicks,* 129 Tex. 297, 103 S.W.2d 962 (Tex.Com.App. 1937, judgment adopted), reaffirmed in *Dallas Ry. & Terminal Co. v. Farnsworth,* 148 Tex. 584, 227 S.W.2d 1017 (1950).

An appellate court (as well as a trial court), in deciding whether an award of damages is so excessive as to require a remittitur, is governed by the standard set forth in *Wilson v. Freeman,* 108 Tex. 121, 185 S.W. 993 (1916), and restated in *Flanigan v. Carswell,* 159 Tex. 598, 324 S.W.2d 835 (1959), as follows:

"All the Court of Civil Appeals can do, and all that is required of it to do . . . is to exercise its sound judicial judgment and discretion in the ascertainment of what amount would be reasonable compensation for the injury sustained, and treat the balance as excess . . . [Having] decided upon an amount that would be reasonable compensation . . . it should authorize a remittitur of the

excess . . . in accordance with its sound judgment."

The accident made the basis of this lawsuit occurred on February 13, 1973, while Clarence E. Cole, hereinafter referred to as "Cole" was injured when the vessel "WHARF CAT", a fishing boat based in Port Aransas, Texas, collided with a large wave at the entrance of the Corpus Christi Ship Channel, near the end of the jetties. The collision was of such force that Cole was torn from the railing which he was holding and thrown to the deck. He sustained serious injuries to his back.

On the date of the accident, Cole was 65 years of age, in apparent good health, and had retired from business in 1968, some four or five years before the happening of the occurrence in question. After retirement in 1968, he and Mrs. Cole traveled with a travel trailer, spending the winter months, beginning about January of each year, in South Texas; went to the lake area in Minnesota for the summer, then returned to their home in Lincoln, Nebraska, for a few weeks in the fall before returning to South Texas again shortly after the first of the year. This lifestyle, or pattern, was one which they had followed consistently during the years following Cole's retirement up to the date of the accident, and one which they had followed every year since the accident in February, 1973.

Following the accident, Cole was taken to Dr. James C. Sharp, Sr., in Port Aransas, who, after examination, sent him to a Corpus Christi Hospital, where he remained for nine days. Since that time, he has not been in a hospital with any back problems. He has not had any surgery. During the balance of the year 1973, he saw a doctor in April. In 1974, he went in the spring and the fall for x-rays and an examination and saw a doctor one time in 1975 for an examination. In the year 1976, he was examined by a doctor at the request of counsel for the defendants.

Cole testified that he "couldn't feel anything" immediately after he was thrown to the deck of the boat; that at the doctor's office he began to feel pain; and that he had never "had any kind of pain like that before". Dr. Sharp described the pain suffered by Cole in these words:

". . . At the time I saw him he was in apparently excruciating pain . . ."

Cole's injury was diagnosed as a compression fracture of a vertebra. Dr. Sharp testified in detail concerning vertebra and compression fractures. He said that such fractures are serious and painful; that the accident caused an immediate destruction of thirty per cent of the affected vertebra; that from the date of the injury in February, 1973 until the trial, which began on June 6, 1977, the destruction showed a progression from thirty per cent to fifty per cent; that the injury was permanent, which would not get any better, and could get worse, and that nature, by the time of trial, had fused Cole's backbone, so that surgery would not be required, but that the natural fusion had developed calcification in the area of the crushed vertebra.

Dr. Wright, the orthopedic surgeon, who attended Cole while he was in the hospital, prescribed a steel brace which Cole wore for about three and a half months following his release from the hospital. About three months thereafter he was fitted with a back brace "similar to a corset", but it made Cole "sore", and he used it only when his "back began bothering me too much". Approximately a year after the accident, Cole began to experience pain in his legs when he attempted to "do some lifting motions". When casting while fishing, Cole said that his arm hurt and that it was "like something that pulls a string or something up back over my shoulder", which he did not experience before the accident. Cole further stated that he has intermittent pain in his back which comes and goes, and that his back bothers him when he sits or stands in one position too long. He further testified:

"Q What percentage of the time in an average waking day would you say your back hurt you now?

A Oh, I would say thirty percent."

He further testified that his enjoyment of life has been impaired because of the physical problems he sustained in this incident. He was not physically able to do the hunting or fishing that he had done previously. He had not been fishing in two years because of his inability to cast or pick up an ice chest without pain. The hunting activities he attempted in 1974 were curtailed because he could not walk over the frozen ground because of pain. The disability that he has with regard to sitting and walking has made these activities impossible. The trips in the automobile from Minnesota and Nebraska to Texas since the accident required approximately twice as long as was the case prior to the accident because of the frequent stops that were required for him to get relief from the pain caused by sitting in one position for more than two or three hours at a time.

Cole worked for the Airport Authority in Lincoln, Nebraska for a number of years. He quit working for the Airport on June 15, 1959, and went into the construction and trucking business. He owned the business, and performed the general duties of a manager and owner of that type of business, including the dispatching, overseeing and general supervision of heavy equipment operators and truck drivers. He was also a qualified heavy equipment operator. He sold his business and retired in 1968. He kept some of the heavy equipment and trucks which he personally operated in maintaining roads to his fishing camp, which was operated by him strictly for pleasure. He sold the fishing camp and all of the remaining heavy equipment and trucks in 1969.

For the approximate nine years (1959–1968) that Cole was in business for himself, his earnings from the business grossed about $30,000.00 per year. After he sold the business, he did not engage in any business or work for profit because he did not want to have the responsibility of operating a business or being fully employed. He said that he had not looked for employment either before or after the accident, but that "after you lay around so long", a person might want to go back to work. He further said that he might go back to work "if I found the right job".

The only work performed by Cole after the accident was in 1974 when he drew some plans for the construction of a building for a friend and he worked as a carpenter in constructing the building. Some days he could work, and some days he could not. He could do "nailing", but could not do any work which required bending or stooping. On the days that he could work, he would work from four to six hours, but "physically had to lay down" as much as "twice in one day" because of his back.

The evidence before the jury showed that Cole was an active, agile and healthy person before the accident who had not experienced any back problems; physically he was able to lift, stoop, bend and involve himself in pursuits, both business and pleasure. The injury to his back and the pain that he suffered in the past, together with the pain that he will, in all probability suffer in the future, coupled with the fact that his back is now "fused", seriously impairs him in doing anything. The evidence shows that Cole is physically unable to do many of the things that he could do before he was injured.

■ There is ample evidence of probative value that Cole: 1) "suffered physical pain and mental anguish, and in reasonable probability, will suffer physical pain and mental anguish in the future; and 2) that he sustained physical impairment in the past, and, in reasonable probability will sustain physical impairment in the future. The jury's answers to that effect are not against the overwhelming weight and preponderance of the evidence. Points 9, 10, 11 and 13 are overruled.

■ We next consider the defendants' points of remittitur. In resolving the issue concerning the amount of each award, we recognize the difficulties presented. See *K–Mart No. 4195 v. Judge*, 515 S.W.2d 148 (Tex.Civ.App.—Beaumont 1974, writ dism'd). As noted in *Adams v. Houston Lighting & Power Company*, 158 Tex. 551, 314 S.W.2d 826, 830 (1958): ·

". . . [t]here is no rule prescribing the manner by which the court determines the amount of remittitur."

We first consider the complaints that the award of $50,000.00 for past physical pain and mental anguish and the award of $25,000.00 for future physical pain and mental anguish are each excessive to the point that a remittitur should be ordered. This Court, in *Southern Pacific Transportation Company v. Peralez*, 546 S.W.2d 88, 98 (Tex.Civ. App.—Corpus Christi 1976, writ ref'd n. r. e.), said:

"[40–42] Because personal injury damages are unliquidated and not capable of measurement by a certain standard, the jury has large discretion in fixing the amount of the award. *Gallegos v. Clegg*, 417 S.W. 347 (Tex.Civ.App.—Corpus Christi 1967, writ ref'd n. r. e.); *Phillips Petroleum Company v. R. T. Burkett*, 337 S.W.2d 856 (Tex.Civ.App.—Fort Worth 1960, writ ref'd n. r. e.). In awarding these damages, the jury is entitled to consider the constant decrease in the value of the dollar. *Johnston Testers v. Rangel*, 435 S.W.2d 927 (Tex.Civ.App.— San Antonio 1968, writ ref'd n. r. e.); *Texas Consolidated Transportation Company v. Eubanks*, 340 S.W.2d 830 (Tex. Civ.App.—Waco 1960, writ ref'd n. r. e.)."

A case which is somewhat analogous to the issue now under consideration (pain and mental anguish) is *Kansas City Southern Railway Company v. Simmons*, 350 S.W.2d 884 (Tex.Civ.App.—Beaumont 1961, writ ref'd n. r. e.). There, the plaintiff sustained a back injury, and the jury awarded him damages in the amount of $139,615.00; the Court of Civil Appeals ordered a remittitur of $40,000.00. The Court observed:

"We regard the record as presenting a case of considerable past and probable future physical pain and mental suffering."

See *Houston Belt & Terminal Ry. Co. v. Burmester*, 309 S.W.2d 271 (Tex.Civ.App.— Houston 1957, writ ref'd n. r. e.) for a multitude of cases involving injuries more or less similar to those sustained by Cole.

■ The instant case also presents a case of considerable past and probable future pain and mental anguish. In 1961, when the *Simmons* case was decided, the purchasing power of our dollar was far greater than its purchasing power in June, 1977, when judgment in this case was rendered. The net award of $99,615.00 in the *Simmons* case supports the award of $50,000.00 and $25,000.00, respectively, in this case for past and probable future pain and mental anguish, even though the plaintiff in the *Simmons* case had a life expectancy of 22.88 years as compared with Cole's life expectancy of 10.4 years. Economics at the time of trial had changed significantly since 1961. The awards are not excessive. Points 12 and 14 are overruled.

■ We next consider the contentions that the award of $4,000.00 for physical impairment in the past and $10,000.00 for probable future physical impairment are each excessive and, under the evidence, require a remittitur. We do not so view the record. Unquestionably, Cole's injuries are permanent which, because of the very nature of the injury and the attendant pain, severely limits Cole's physical movements. No basis exists in the record for the suggestion of a remittitur because of physical impairment. Points 15, 16 and 19 are overruled.

Finally, we consider defendants' points of error attacking the jury's awards in special issues 8(c) and (d) of $45,000.00 "for loss of earning capacity in the past", and of $25,000.00 "for loss of earning capacity which, in reasonable probability, he will sustain in the future." For the reasons stated below we agree that the jury's answers to these special issues which assigned a monetary value to Cole's loss of earning capacity cannot stand under the evidence presented at the trial.

■ The record contains no evidence of any particular monetary earnings attributable solely to Cole, either prior to, or after the accident. Under the decisions of the Texas Supreme Court, a plaintiff seeking damages for impairment of earning capaci-

ty must introduce into evidence some monetary measure of earning capacity, or have some reason for failing to do so. As stated by our Supreme Court, in *Bonney v. San Antonio Transit Company*, 160 Tex. 11, 325 S.W.2d 117, 121 (1959), said:

".  .  . The rule in this jurisdiction is that where a plaintiff seeks damages for impairment of earning capacity, he must prove the amount of such damages with the degree of certainty to which it is susceptible.  .  .  . This rule requires that a plaintiff introduce evidence from which a jury may reasonably measure in monetary terms his earning capacity prior to injury, unless some reason appears for his failure to do so.  .  .  ."

In the instant case, Cole candidly admitted that he had not searched for any work or employment before or since his injury because he really did not want to be employed. He was sixty years of age when he retired; he was sixty-five years of age when he was injured; he was sixty-nine years of age at the time of trial.

It is conclusively established by the evidence that Cole, in addition to self-employment, could earn money in the following categories: 1) as a heavy equipment operator; 2) as a carpenter; 3) as a draftsman of "plans"; and 4) as an employee in an unexplained capacity of an airport authority. Cole testified that his physical injuries caused by the accident would prevent him from working in these occupations to the same extent that he could have worked prior to the accident. The extent of the physical impairments which reduced Cole's earning capacity was further corroborated by ample medical testimony. However, there is no evidence concerning the amount of his prior earnings as a heavy equipment operator, a carpenter, a draftsman or an employee of an airport authority, nor is there any evidence as to how much his earnings would have been had he worked in those capacities, or either of them.

Cole, prior to his injury, had been self-employed. That period, however, covered nine years and ended four or five years before the date he was injured. Cole's earnings during the period of his self-employment (1959–1968) amounted to $30,000.00 gross earnings per year; his earnings resulted from three sources: 1) his own management and supervision of his business, including employees; 2) the labor of his several employees; and 3) the return on capital invested in heavy equipment and trucks. Under the rule of *King v. Skelly*, 452 S.W.2d 691 (Tex.Sup.1970), Cole's *gross* earnings of $30,000.00 per year for the years 1959–1968 were not a true measure of his earning capacity for the years subsequent to 1973.

There is no evidence which would indicate either the amount of Cole's earnings had he worked for another, or a monetary measure of his earning capacity prior to his injury as required by our Supreme Court in the *Bonney* and *King* cases, above cited. No reason appears in the record for Cole's failure to introduce such evidence. Without some specific evidence of earning capacity, the jury could do nothing more than speculate. Although there is no monetary evidence of earning capacity, there is some evidence of a general impairment of earning capacity due to Cole's degenerated physical condition, and this was admitted by counsel for defendants by suggesting, in oral argument before this Court, that $5,000.00 be awarded for diminished past earning capacity.

After reviewing the record in its entirety favorably to Cole, we are of the opinion that the awards of $45,000.00 as damages for loss of past earning capacity, and $25,000.00 as damages for probable loss of future earning capacity, when considered in the light of the evidence, are so excessive as to warrant the conclusion that such awards were the result of passion or prejudice or some other improper motive. But, having found no other error in the record which requires reversal, it is our duty to suggest a remittitur and the time within which it may be filed. Rule 440, T.R.C.P.

We are of the opinion that the award of $45,000.00 as damages for loss of past earning capacity is excessive in the amount of $40,000.00, and that the award of $25,000.00 for probable loss of future earning capacity

is excessive in the total amount of the award. We hold that the judgment is excessive in the amount of $65,000.00. Points 17 and 18 are sustained, and points 1 through 8 are overruled.

It is accordingly, ordered that a remittitur of $65,000.00 be filed in this Court by the plaintiffs within ten days from the announcement of this decision, whereupon this Court will reform the judgment of the trial court by the amount of the remittitur; otherwise, the judgment of the trial court will be reversed and the cause remanded for a new trial.

The judgment of the trial court is AFFIRMED ON CONDITION OF REMITTITUR.

### SUPPLEMENTAL OPINION ON THE FILING OF REMITTITUR

This Court has suggested that appellees remit the sum of $65,000.00 as set forth in the original opinion. The appellees, through their attorney have filed a remittitur in the amount suggested by this Court.

Therefore, in accordance with the opinion of this Court heretofore announced, the judgment of the trial court is reformed to the extent of the amount hereby remitted by appellees so that the amount of judgment against the appellants is reduced to the sum of $97,500.00.

The costs of this appeal are taxed one-third (⅓) to the appellees and two-thirds (⅔) to the appellants.

The judgment as herein reformed is hereby AFFIRMED.