**TEXAS MUNICIPAL POWER AGENCY, Appellant,**

v.

**Tony R. BERGER et al., Appellees.**

**No. 17595.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

March 27, 1980.

Naman, Howell, Smith, Lee & Muldrow, P. C., Roy L. Barrett, Waco, for appellant.

Karl C. Hoppess, Warren G. King, Houston, Coulter T. Hoppess, Bryan, Latham Boone, III, Navasota, for appellees.

Before PEDEN, WARREN and EVANS, JJ.

EVANS, Justice.

This condemnation proceeding was initiated by the appellant, Texas Municipal Power Agency (TMPA). TMPA sought to condemn the surface of a tract of 28.304 acres in Grimes County owned by the appellees, Tony R. Berger and wife Marguerite Berger, and also the right to prevent the removal of minerals within 200 feet of the surface of the land. The jury found that the market value of the surface, together with all minerals, if any, located within 200 feet of the surface was the sum of $65,099.20, reflecting a market value of $2300.00 per acre. TMPA brings this appeal, complaining that the trial court erred in admitting in evidence certain exhibits and testimony concerning the quality, quantity and market value of lignite material under the surface of the land and that the evidence is legally insufficient to support the jury's verdict.

The principal issue at the trial was whether the value of the tract would be enhanced by reason of its having a potential for commercial lignite production. There are three different types of "beds" of lignite in the general area of the Bergers' land, only one of which (the "green" bed) has a market value for commercial production. Mr. Winston Sahinen, the geologist witness for the Bergers, testified that in his opinion the valuable type of lignite was located under the Bergers' property. However, Dr. Christopher Matheson, the geologist called as a witness on behalf of TMPA, expressed a contrary opinion.

Both expert witnesses testified that in reaching their respective conclusions, they had considered certain maps, electrical logs, core samples and chemical analyses of core samples obtained from the Paul Weir Company, an organization which had been retained by TMPA to conduct exploration work in the area to verify the presence or absence of lignite deposits. This data was initially offered in evidence by the Bergers through the written deposition of Mr. Paul Anderson, a geologist employed by the Paul Weir Company.

Mr. Anderson identified seventeen exhibits as being derived from his company's exploration of the area in question. Included within these exhibits were maps showing drillsite locations on land on which he had supervised the drilling of core samples; printouts of electrical logging operations at the drillsite; sample descriptions of the core samples made by visual examination; chemical analyses of the core samples; projections and estimates made by his company of the lignite make-up of the explored lands; and letters explaining and updating the projections and estimates. Mr. Anderson testified that these exhibits had been prepared in the regular course of his employment, at or near the time of drilling, and maintained in his company's business records. All seventeen exhibits were then

offered in evidence as a group and TMPA objected to all of the exhibits on the following grounds:

"Your Honor, we object to all of these exhibits based on they contain hearsay and contain chemical analyses—First, they contain hearsay. Secondly, they contain chemical analyses, electric logs and information that has not been properly proven up and authenticated by testimony of any witnesses, . . . ."

When TMPA made this objection, the trial court excused the jury, and the Bergers' attorney read more deposition testimony into the record. Through his deposition, Mr. Anderson testified that either he or another company employee had been present and supervised the taking of the core samples and that the samples were taken in accordance with accepted geological practices. The samples were then placed in plastic bags and delivered to Commercial Testing Company's laboratory in Chicago for chemical analyses. The Paul Weir Company sent instructions with the samples explaining how they were to be handled and what was to be done to them, and the testing laboratory then made the chemical analyses and sent its reports back to the Paul Weir Company. Mr. Anderson testified regarding this chain of events as follows:

Question: "Are those samples from the holes that you cored, they were taken and under your supervision delivered to the laboratory here in Chicago?"

Answer: "Yes."

Question: "And was the testing in that laboratory here in Chicago, that you had talked about, were done in accordance with the accepted laboratory procedure?"

Answer: "Yes, I assume it was."

Question: "And your office here is familiar with the way that laboratory conducts its tests?"

Answer: "Yes. We have confidence in them, which is why we use them."

Question: "But you also, you may not individually, but the people here in your office know what kind of tests they do and how they do the tests?"

Answer: "Yes. Our people send instructions as to how the cores will be handled and what will be done to the cores."

Question: "And you get the report back from them?"

Answer: "Yes."

The Bergers also offered deposition testimony of Mr. John Paul Weir to the effect that the Paul Weir Company had used the Commercial Testing Company in the past and considered Commercial Testing to be "leaders in their field." Upon presentation of this additional testimony, the trial court indicated its satisfaction that a sufficient predicate had been made for the admission of the group of exhibits in evidence, and it overruled the hearsay objection of TMPA.

TMPA contends that the trial court erred in admitting the chemical analyses in evidence because there was no proof as to the identity and qualifications of the individuals performing the analyses or that such tests were performed in accordance with accepted laboratory procedures and because the evidence failed to establish a proper chain of custody from the time the core samples were mailed to the laboratory to the time of Paul Weir Company's receipt of the reports of chemical analyses.

TMPA concedes in its brief that the maps, electric logs and photographs of core samples were properly received in evidence and that such data constituted "some evidence" in support of Mr. Sahinen's opinion testimony as to the existence, location and quantity of lignite material beneath the Bergers' property. TMPA contends, however, that Mr. Sahinen's opinion regarding the marketable quality of such lignite material is based entirely upon the written reports of chemical analyses which, it argues, were improperly received in evidence.

█ ·A general objection to evidence as a whole, whether it be oral or documentary, which does not point out specifically the portion objected to, is properly overruled if any part is admissible. *Brown & Root v. Haddad*, 142 Tex. 624, 180 S.W.2d 339 (1944) and authorities cited. TMPA's objection was levelled at the entire group of exhibits and TMPA did not specifically point out to the trial court of the specific basis for its contention that the Bergers had not established a sufficient predicate for the admission of the electric logs and reports of chemical analyses.

█ In order to preserve error, specific objections to the admissibility of evidence must be made in the trial court. *Matter of Bates*, 555 S.W.2d 420, 432 (Tex.1977); *Baylor U. Med. Cent. v. Travelers Ins. Co.*, 587 S.W.2d 501, 505 (Tex.Civ.App.—Dallas 1979, writ ref'd n. r. e.). A specific objection is one which enables the trial court to understand the precise question and to make an intelligent ruling, affording the offering party an opportunity to remedy the defect if possible. *University of Texas System v. Haywood*, 546 S.W.2d 147 (Tex.Civ.App.—Austin 1977, no writ).

After TMPA made its initial objection the Bergers presented additional testimony to establish the authenticity of the seventeen exhibits being offered as a group. It should be noted that TMPA made no further objection after this testimony was presented, and upon its direct examination of its own witness, Dr. Matheson, it made use of the reports of chemical analyses which it now contends were improperly admitted.

The admission of the reports of chemical analyses, even if error, does not constitute harmful error when the evidence in the record is considered in its entirety. Rule 434, T.R.C.P. The Bergers' geologist witness, Mr. Sahinen, testified that in arriving at his opinion, he considered (1) the maps and geophysical electric logs; (2) the photographs of the core samples taken in the exploration; (3) the written reports of chemical analyses of the core samples; (4) the core descriptions prepared at the drill-

ing site, and (5) his own training and experience. It is undisputed that Mr. Sahinen was well qualified by his training and experience to evaluate the quality, quantity and value of lignite material. Although Mr. Sahinen testified that he considered the chemical analyses of core samples to be the most accurate means of ascertaining the quality of lignite, his testimony shows that his conclusions were based, in part, upon other data such as his evaluation of the core sample photographs and upon his general appraisal of all the exhibits based upon his knowledge gained through training and experience in the field.

█ In a condemnation proceeding where the central issue is the value of the property being condemned, the trial court is given considerable latitude in determining the qualifications of expert witnesses and in deciding the admissibility of evidence which will aid the jury in its deliberations. *City of Teague v. Stiles*, 263 S.W.2d 623, 628 (Tex.Civ.App.—Waco 1953, writ ref'd n. r. e.). It is settled that in such a proceeding an expert witness may testify with respect to hearsay data forming the basis of his opinion on value, and such data is admissible, not as independent proof of value, but in explanation of the basis of the expert's opinion. *State v. Oakley*, 163 Tex. 463, 356 S.W.2d 909, 914 (1962); *Cohn v. State*, 438 S.W.2d 860, 861 (Tex.Civ.App.—Houston [1st Dist.] 1968, writ ref'd n. r. e.); *Harris County Flood Control District v. Hambrick*, 433 S.W.2d 195 (Tex.Civ.App.—Houston [1st Dist.] 1968, no writ).

█ As a general rule, where it appears that the opinion of an expert witness is predicated both upon personal knowledge and upon hearsay data, his testimony is admissible. *Slaughter v. Abilene State School*, 561 S.W.2d 789 (Tex.1977). Thus, an expert, when properly qualified, may base his opinion, in part, upon reports of others which are customarily and usually relied on by experts in his field and which, together with his own personal knowledge, support or tend to support his expert opinion. *Lewis v. Southmore Savings Association*, 480 S.W.2d 180 (Tex.1972). It is only

where the expert's opinion is based *solely* upon ex parte reports that his testimony is inadmissible and without probative value. *Moore v. Grantham*, 599 S.W.2d 287 (Tex. 1980).

■ TMPA did not challenge the qualifications of Mr. Sahinen as an expert witness, nor did it make any objection to his testimony as an expert concerning the probable existence of and marketable value of lignite deposits beneath the Bergers' property. Neither did TMPA request an instruction from the trial court limiting the jury's consideration of the reports of chemical analyses to the specific object of showing the basis for Mr. Sahinen's opinion. In order for TMPA to complain of the trial court's failure to limit the admission of the data to a specific purpose, it was necessary that a specific request to that effect be made to the trial court. *Tennessee Gas Transmission v. Morehead*, 405 S.W.2d 81, 85 (Tex. Civ.App.—Beaumont 1966, writ ref'd n. r. e.).

It is important to bear in mind that the central issue in the trial court was not whether marketable lignite was, in fact, located under the Bergers' land, but whether the value of the Bergers' property should be enhanced by reason of its potential for commercial lignite production. On this question, Mr. Sahinen's opinion had substantial bearing, but there was also other expert testimony which would, in itself, support the jury's verdict.

Mr. George Webb, a real estate appraiser called as a witness by the Bergers, testified that he had seventeen years of experience in the real estate business in that area, having worked in land sales and in the appraisal of lands, including those involving anticipated mineral reserves. Mr. Webb testified that there had been no comparable sales in the area involving lignite reserves because lignite had not been mined in that region, and he indicated that his opinion as to value was based not upon the actual presence of lignite, but upon the enhanced value of the property due to its potential for commercial lignite production.

In making his appraisal, Mr. Webb took into consideration a report received from Mr. Sahinen indicating the probability of marketable lignite being located beneath the surface of the property. Mr. Webb considered Mr. Sahinen to be "highly qualified and respected in his field" and testified that, in his opinion, it was irrelevant whether Mr. Sahinen's report was right or wrong, since the mere existence of the report would enhance the value of the property. Mr. Webb indicated that his opinion was not based upon the actual presence of lignite, but rather upon the additional amount per acre which a willing buyer would pay for the land based upon the report of a responsible geologist reflecting a potential for commercial production. It was Mr. Webb's opinion that the market value of the Bergers' property would be enhanced in the amount of $800 per acre by reason of the geologist's report, and when this per acre value is added to the highest estimate of surface value ($1500 per acre), the result is the $2300 per acre value found by the jury.

TMPA made no objection to Mr. Webb's qualifications nor to his testimony in this respect until after it had been received in evidence. On subsequent voir dire examination, TMPA objected that Mr. Webb had not been qualified as an expert witness with respect to lignite or its value. On further examination by the Bergers' counsel, Mr. Webb testified without objection that he had used the information received from Mr. Sahinen concerning the present day market value for lignite and the probability of marketable lignite beds being found beneath the Bergers' property, and that he had then applied his "appraisal procedures" to determine how such information would affect the market value of that particular tract of land.

Mr. Webb's testimony shows that in his determination of the amount of the enhanced value of the property, he did not assume the actual existence of marketable lignite under the Bergers' tract but rather based his appraisal on the probability of an increased sales price due to the report of a reputable geologist indicating the presence of commercially valuable lignite.

Mr. Webb's testimony was sufficient to establish a basis for the jury's finding of enhanced value even in the absence of any admissible data supporting Mr. Sahinen's opinion that marketable lignite was located under the property. The absence of supportive market data may diminish the reliability of expert testimony, but it does not destroy its probative value. *Texas Electric Service Company v. Wheeler*, 551 S.W.2d 341 (Tex.1977). The record contains evidence of probative value from which the jury could have concluded that there was a market for lignite in the area of the Bergers' property at the time of the taking and that the value of the condemned tract of land was enhanced in the amount indicated.

A point of error is also asserted by TMPA that the trial court erred in admitting in evidence a certain map and testimony of Mr. Roger Gerald, a witness called on behalf of the Bergers. Mr. Gerald testified that his company had conducted a lignite leasing program in the area of the Bergers' property about two and a half years prior to the date in question, and his testimony was admissible to establish the existence of a market for lignite in the area of the Bergers' property at the time of taking. TMPA made no request for an instruction limiting the jury's consideration of Mr. Gerald's testimony to any specific purpose, and its contention that his testimony and map were irrelevant and immaterial is overruled.

The judgment of the trial court is affirmed.