**DELHI GAS PIPELINE CORPORATION,**
Appellant,

v.

**Cull RICHARDS, et ux, Appellees.**

No. 1557.

Court of Appeals of Texas,
Tyler.

Sept. 8, 1983.

Supplemental Opinion Oct. 13, 1983.

James N. Parsons, III, Palestine, for appellant.

Gus E. Meriwether, Sallas, Meriwether & Pemberton, Crockett, for appellees.

SUMMERS, Chief Justice.

This is an eminent domain proceeding. Appellant, Delhi Gas Pipeline Corporation (Delhi), instituted condemnation proceedings against appellees, Cull Richards and wife (Richards), for the purpose of condemning a pipeline easement fifty feet in

width across a 315.46 acre tract of land owned by Richards. The date of taking was April 20, 1978. The land taken consisted of 4.131 acres and was condemned for the purpose of constructing a 20-inch natural gas pipeline. Trial was before a jury and resulted in a verdict awarding Richards the sum of $43,562.25, which sum includes $4,647.37 for the 4.131 acres taken and $38,-914.88 for damages to the remainder. The trial court entered judgment on the verdict, and Delhi perfected this appeal.

There is no question raised as to the right of Delhi to take the property or as to the procedure followed. The only questions raised were the fair market value of the property taken and the damage, if any, to the remainder.

Delhi, plaintiff below, predicates its appeal upon six points of error. Its first point asserts that the trial court erred in admitting into evidence a hypothetical plat of a nonexistent subdivision of subject land because the land is raw acreage.

The property in question was originally purchased in 1911 by Richards' parents who made the property their home for a number of years. In April 1978 the property owned by Richards consisted of 315.46 acres of land on which was located a farm house which had been there since 1922. The property is situated east of the city of Crockett about 1½ to 2 miles from the loop in an area that is generally pasture or crop land with rural residences, some of which are new homes in the area. The residences are located on various size tracts ranging from one or two acres up to several hundred acres. The county airport, consisting of 58.746 acres sold by Richards to the Houston County Development Foundation in 1960, divides the subject property except for a ten-foot easement on the south end of the airport which connects the east and west parts of subject property. At the time of taking for the Delhi pipeline, two pipeline easements already existed on the subject property. One was a seventy-five foot Exxon gas pipeline easement which ran in a north-south direction over the eastern portion of said property lying west of the air-

port. The other was a United Gas pipeline easement which crosses the southeastern part of the property which lies east of the airport. The record reflects that in April 1978 Richards' property was bounded on the north by State Highway No. 7 (a primary highway connecting the area with Lufkin or Nacogdoches to the east and with the Crockett loop to the west), and on the south by the Crockett-Arbor road; that the area is served with community water systems, electrical and telephone services and that subject property was being used by Richards for grazing cattle. The record further reflects that prior to April 1978 Richards had taken the following steps to develop his property as rural homesites. He employed a surveyor who went upon subject property, surveyed the centerline and then prepared the plat, identified as Defendant's Exhibit No. 3, dividing the part of subject property lying west of the airport property into 28 rural homesites ranging from one to 36.3 acres, each with access to either Highway No. 7, the Crockett-Arbor Road or the airport property. Furthermore, prior to April 1978 two tracts shown on the plat had been sold off the property and those tracts surveyed on the ground in accordance with the plat. Moreover, a third tract shown on the plat has been sold and staked on the ground in accordance with the plat since the pipeline was laid. A pencil line running from Highway No. 7 first in a southeasterly direction and then southerly to the Crockett-Arbor Road was identified by Delhi (according to the record) as the Delhi pipeline.

At trial Delhi made the following objection, which was overruled by the court, to the introduction of Defendant's Exhibit No. 3:

> I object on the basis that it has not been shown that anything was done on the ground to make this toward any kind of subdivision. It was just pasture land. He [Richards] testified that its been used as grazing land. Based on the cases that I have cited—especially State versus Wiley, a Supreme Court case, this is not admissible into evidence and I would object on that basis.

Where the property condemned is raw acreage it is generally not proper to admit in evidence hypothetical plats of non-existent subdivisions. *Kaufman Northwest, Inc. v. Bi-Stone Fuel Co.,* 529 S.W.2d 281, 288 (Tex.Civ.App.—Tyler 1975, writ ref'd n.r.e.); *Lower Nueces River Water Supply District v. Collins,* 357 S.W.2d 449, 452 (Tex. Civ.App.—San Antonio 1962, writ ref'd n.r. e.). The rule, however, is subject to the exception that such plats are admissible in evidence where they are relevant to prove some issue in the case and are limited to that purpose. *Lower Nueces River Water Supply District, supra.* The three valuation witnesses gave the following opinions as to the highest and best use for subject property: one (called by Richards) stated to sell the property as subdivided acreage, one (called by Delhi) said for use "as a rural homsite [sic] or pasture or agricultural purposes," and another (called by Delhi) said "for pasture land and rural residential with potential speculation to future development." The testimony of these witnesses as to market value of the land taken for the easement as well as of the remainder was limited to and given on an acreage basis. There was no testimony as to the value of the tract by lots, all testimony being as to the value by acre. We believe that under the facts and circumstances of the instant case, Defendant's Exhibit No. 3 comes within the exception and was admissible to show the adaptability of Richards' land for subdivision development.

Texas Jurisprudence in its section under Eminent Domain states in effect that the value of land is to be confined to the actual use to which it is put by the owner only in those cases where there is an absence of any evidence showing its adaptability for another use will give it greater value, 22 Tex.Jur.2d *Eminent Domain* § 173; and continuing in the same text, "Not only the actual use made of the property, but also any use to which the property is adapted and might be put, should be taken into account in estimating its market value. In general, the best or most valuable use to which condemned property is adapted is to be considered in fixing its

value, and not the condition in which the owner has maintained the property or the use to which it may be applied at the time; this rule is applicable not only to the property taken but also to any remaining portion thereof." 22 Tex.Jur.2d § 174 and authorities cited. See also 29A C.J.S. *Eminent Domain* § 273(2); 27 Am.Jur.2d *Eminent Domain* § 280. Stated another way, value may reflect not only the use to which the property is presently devoted but also to that use to which it may readily be converted. *Calvert v. City of Denton,* 375 S.W.2d 522, 525 (Tex.Civ.App.—Fort Worth 1964, writ ref'd n.r.e.). Although we have concluded that Defendant's Exhibit No. 3 was admissible as an exception to the general rule, in the event we be in error, we hold that the admission of said exhibit did not result in any harm to appellant. Delhi's first point is overruled.

In its second point of error Delhi complains that "the trial court erred in admitting evidence as to Richards' subjective intent concerning the future use of the subject property because such evidence is too speculative." In its brief appellant asserts as follows: "The court also admitted Richards' testimony relating to his intended development of the tract. This evidence was introduced over objections of Delhi (S.F. 3839)." There being no page 3839 in the statement of facts, we interpolate that this reference refers to pages 38 and 39 thereof.

On page 38 of the statement of facts, the following question was propounded to Richards by his counsel: "All right. If you would have a seat there, I'll ask you whether or not you, at the time this pipeline was laid, had any plans concerning the use of that property at that particular time. Just tell me whether or not you had any plans, sir." At that point Delhi's counsel objected to any testimony as to his intent or plans to use the property, stating that it is subjective and speculative and improper evidence in the case. The record does not reflect any ruling by the court nor any answer by the witness to the question.

On page 39 of the statement of facts, we find the following:

Q (By Mr. Meriwether) Mr. Richards, I'll ask you whether or not you, prior to April of 1978, had taken any steps toward the development of this property.

A I had.

Q And what steps had you taken, Mr. Richards?

A Well, I had it cut up, a little map made of it.

MR. WELLS: Your Honor, I object at this time to any testimony about a map being cut up. That's beyond the scope of the proper evidence in this case. There's been no proper predicate laid for that kind of evidence at this time.

THE COURT: Overruled. He may testify as to what he did toward developing the property, Counsel.

We find no merit in appellant's contention and its second point is overruled.

■ Appellant asserts in its third point that there is no evidence to support the jury's finding of the value of the remainder before the taking, and in its fourth point that said finding is "unsupported by the evidence or is so against the overwhelming weight and preponderance of the evidence as to be manifestly unjust." In answer to Special Issue No. 3, the jury found the market value of the remaining 311.319 acres immediately before the taking to be $1,250.00 per acre. Three experts testified as to the market value of the property. Appellees' witness McLen, a real estate broker, testified that the property before the taking had a value of $2,500.00 per acre. Delhi's witness Nemer, a real estate appraiser, testified that the value of the property before the taking was $850.00 per acre, and its witness Lyon, a real estate appraiser, testified that the value of the land before the taking was $1,050.00 per acre. The amount of $1,250.00 per acre fixed by the jury was well within the range of the expert testimony. We do not agree with the contention in Delhi's brief that McLen's testimony *clearly* shows that his opinion of the value of the subject tract prior to the tak-

ing was based *solely* on an unaccepted offer. Delhi's objection to testimony as to an unaccepted offer was sustained by the court. Delhi made no request for the court to strike McLen's testimony. Furthermore, the jury made the same finding as to the value of the property taken (4.131 acres) prior to the taking, and appellant has made no complaint of that finding. Viewing the evidence in the light most favorable to the finding, we find there is evidence of probative force to support the jury's finding of the value of the remainder before the taking. After weighing and balancing all of the evidence, we have concluded that we would not be justified in holding that the evidence was insufficient to support said finding or that the finding was so against the overwhelming weight and preponderance of the evidence as to be manifestly unjust. Appellant's third and fourth points are overruled.

Appellant's fifth point asserts that the jury's "finding of the value of the remainder after the taking is unsupported by the evidence or is so against the overwhelming weight and preponderance of the evidence as to be manifestly unjust." In answer to Special Issue No. 4, the jury found the market value of the remainder immediately after the taking was $1,125.00 per acre. Mr. Nemer testified that the market value of the remainder after the taking was $850.00 per acre; Mr. McLen testified that such value would be less than $1,000.00 per acre; and Mr. Lyon testified that such value was $1,050.00 per acre.

■ Appellant contends that since no witness put the after taking value of the remainder as high as $1,125.00 per acre, the value found by the jury, that this finding is without support in the evidence and should not stand. The testimony of the experts as to the after taking value of the remainder ranged from a low of $850.00 per acre to a high of $1,050.00 per acre. It has been held in *Maddux v. Gulf, Colorado & Santa Fe Ry. Co.,* 293 S.W.2d 499 (Tex.Civ.App.— Fort Worth 1956, writ ref'd n.r.e.), that in a condemnation case of this kind the jury, when considering the value of condemnee's remaining property immediately after con-

demnation, is *restricted only by the lowest figure testified to.* Also, a jury is at liberty to reach its conclusion by blending all the evidence admitted before them, aided by their own experience and knowledge of the subject of inquiry; that they are not compelled to credit all the testimony of any witness or to reject it all. *McConnico v. Texas Power & Light Company,* 335 S.W.2d 397 (Tex.Civ.App.—Beaumont 1960, writ ref'd n.r.e.). Moreover, our courts have held that opinion evidence is not conclusive. A jury may consider and accept or reject such opinions or it may find its own opinion from evidence and by utilizing its own experience in matters of common knowledge. *Roberts v. State,* 350 S.W.2d 388 (Tex.Civ. App.—Dallas 1961, no writ), and cases cited therein. When viewed in the most favorable light, the jury's per-acre finding of the value of the remainder after the taking (in answer to Special Issue No. 4) is supported by some evidence when its application is limited to that portion of the remainder which lies west of the airport property. After a review of all the evidence, both that in favor of and against the jury's finding, we agree with appellant's contention that the jury's answer to Special Issue No. 4 is so against the overwhelming weight and preponderance of the evidence as to be manifestly unjust when applied to that portion of the remainder which lies east of the airport property, but not when applied to that portion of the remainder which lies west of the airport property. We do not believe that the portion of the remainder, consisting of 89.519 acres, which lies east of the airport property has been damaged by the taking of the Delhi easement. The Delhi pipeline is located west of the previously existing Exxon pipeline easement and entirely on that portion of the Richards' property which lies west of the airport property. Appellant's fifth point is sustained insofar as it applies to that portion of the remainder which lies east of the airport property.

In its sixth point, Delhi contends that the remainder awarded by the jury is manifestly excessive and clearly shows, in light of the evidence and record, that such award

was a result of passion, prejudice or sympathy for the defendants, or other improper motive or was in disregard of the evidence.

■■■■ New trials may be granted when the damages are manifestly too small or too large. Rule 328.[1] It is settled that the trial court and the appellate courts have a duty to weigh and consider the evidence in a condemnation case, and the appellate courts will either order a remittitur or will reverse and remand condemnation cases where the damages awarded are inadequate or excessive. The method most often used to cure the excessiveness is to require that a remittitur be filed upon condition of allowing the judgment to stand. Rayburn, *Texas Law of Condemnation* § 226, at 581 (1960).

Rule 440 provides that in civil cases appealed to a court of civil appeals, if such court is of the opinion that the verdict and judgment of the trial court is excessive and that said cause should be reversed for that reason only, then said appellate court shall indicate to such party or his attorney within what time he might file a remittitur of such excess. If such remittitur is so filed, then the court shall reform and affirm such judgment in accordance therewith. If not filed as indicated, then the judgment shall be reversed. There are numerous cases holding that if the court of civil appeals is of the opinion that the verdict and judgment of the trial court is excessive, it may suggest a remittitur of excessiveness, and if the remittitur is not filed, then the court can reverse the trial court's judgment. *Adams v. Houston Lighting & Power Co.,* 158 Tex. 551, 314 S.W.2d 826 (1958); *Carter v. Texarkana Bus Co.,* 156 Tex. 285, 295 S.W.2d 653 (1956).

■■■■ The question of whether the amount of a verdict and judgment is excessive is a question of fact. *Flanigan v. Carswell,* 159 Tex. 598, 324 S.W.2d 835 (1959). From our review of the record in this case, we find no affirmative showing that the jury's verdict is a product of passion, prejudice or sympathy for the defendants or

---

1. This and all other references to rules are to Tex.R.Civ.P. unless otherwise noted.

other improper motive. We are of the opinion, however, that the award of $38,914.88 for damages to the remainder is excessive in the amount of $11,189.87 (89.519 acres × $125.00 per acre). We have determined the acreage which lies east of the airport property to be 89.519 acres by first ascertaining the acreage in that portion of Richards' property which lies west of the airport property to be 221.80 acres (from an addition of the unsold tract acres shown on Defendant's Exhibit No. 3) and then subtracting the 221.80 acres from the total remainder of 311.319 acres. We hold that the judgment is excessive in the amount of $11,189.87, and appellant's sixth point is sustained to that extent.

Having found no other error in the record which requires a reversal, we will reform and affirm the trial court's judgment if Richards file their written remittitur in the sum of $11,189.87 within fifteen days from the date of the delivery of this opinion; otherwise, the judgment will be reversed and the cause remanded for a new trial.

SUPPLEMENTAL OPINION

On September 8, 1983, this court delivered its opinion affirming the judgment of the trial court below conditioned that appellees, Cull Richards, et ux, file their written remittitur in the sum of $11,189.87 within fifteen days from September 8, 1983. The written remittitur suggested has been duly filed.

The judgment of the trial court is thus reformed to show that Cull Richards and Mrs. Cull Richards recover over and against Delhi Gas Pipeline Corporation the sum of $32,372.38, which sum includes $27,725.01 for damages to the remainder of appellees' land; that appellant pay to appellees the sum of $21,514.38 (being the reformed judgment sum of $32,372.38 less $10,858.00 deposited by appellant in and withdrawn by appellees from the registry of the trial court), with interest at the rate of 6% per annum from April 20, 1978, to date of judgment (June 15, 1981), together with interest from date of judgment until paid at the rate of 9% per annum, and costs herein.

The judgment of the trial court as reformed is affirmed.