The STATE of Texas, Appellant,

v.

R.A. KNAPP, et al., Appellees.

No. 08–85–00221–CV.

Court of Appeals of Texas,
El Paso.

July 15, 1987.

Rehearing Denied Aug. 12, 1987.

810

Jim Mattox, Atty. Gen., Richard D. Naylor, Asst. Atty. Gen., Highway Div., Austin, for appellant.

Robert A. Skipworth Ainsa, Skipworth, Zavaleta & Butterworth, El Paso, Timothy Patton, Sharon E. Callaway, Groce, Locke &

Hebdon, San Antonio, Woodrow W. Bean, II, El Paso, for appellees.

Before OSBORN, C.J., and SCHULTE and WOODARD, JJ.

## OPINION

SCHULTE, Justice.

This is a condemnation case. The State of Texas proceeded to judgment under its power of eminent domain. Tex.Const. art. I, sec. 17 (Vernon 1984). The State thus acquired the fee simple title to the surface estate of a 3,520–acre tract of land for inclusion in the Franklin Mountain State Park in El Paso County. The jury found the reasonable cash market value of the tract on the date of taking to be $9,900,-000.00. We modify and reform the judgment below and, as so modified and reformed, affirm.

The State's action was initiated in March, 1981, and went to trial March 18, 1985. The verdict was returned April 4, 1985. The parties readied the case for submission by May, 1987. The transcript, statement of facts and extensive exhibits occupy sixteen volumes. We will refer to the Appellant, the State of Texas, as the State. The fee simple title owners were Appellees R.A. Knapp and wife, Karol Knapp, and R.E. Knapp and wife, Barbara Knapp. Reference will be made to the Knapps or the Knapp interest. A lease agreement interest relating to the communication site was held by Appellees Robert D. Garland, Jr. and wife, Marie Garland, and Larry Francis and wife, Marilyn Francis. We will refer to them as Garland and Francis, or the Garland and Francis interest. Carroll Ann Shelton Jones and husband, Luther Jones, James M. Shelton, Jr. and wife, Robin Shelton, and James M. Shelton were recipients of an award of the Special Commissioners for their interest in the aggregate rights. The Sheltons are not parties to this appeal, but we will make reference hereafter to the Sheltons and the Shelton interest. Two taxing agencies, also award recipients, are not parties to this appeal.

Appellant raises thirty-one points of error which may be considered under eight general topics. These eight concern generally the admission of certain evidence regarding access; certain evidence concerning appraisal; judicial estoppel; the Garland and Francis interest; the Shelton interest; the market value testimony of Knapp and the prejudgment interest; jury argument; clerical error, postjudgment interest and cumulative error.

In that we see problems with the judgment of the trial court as it relates to Points of Error Nos. Seventeen through Twenty-Two regarding the Shelton interest and Point of Error No. Twenty-Nine dealing with a clerical error in the computation of the Garland and Francis interest, we will treat those subjects first and, in the process, will review much of the record.

Under Rules 80 and 81, Tex.R.App.P., this Court may modify a judgment by correcting and reforming it where necessary and enter the decree that the court below should have rendered. We afford Point of Error No. Seventeen a reading under Rule 74(d), Tex.R.App.P., that ascribes to it principally a complaint that the trial court erred in failing to credit the State with $957,832.12 paid by the State for the Shelton interest under the award of the Special Commissioners. We see, too, clerical error in the calculation of the sum due Garland and Francis as raised by Point of Error No. Twenty-Nine. Rule 301, Tex.R.Civ.P., provides in part that the judgment shall conform to the pleadings, the nature of the case proved and the verdict. We will examine the transcript, the pleadings and the statement of facts, the verdict of the jury, and the judgment as those items relate principally to the Shelton interest and as they otherwise relate to the other points to be considered.

From the transcript, it appears that on March 13, 1981, the State filed its original statement or petition for condemnation "of the land and interests or rights pertaining thereto" listing the Sheltons as one of the owners. On April 10, 1981, the Special Commissioners returned a total award of $8,099,900.00 for the 3,520 acres, which included these specific awards:

| | | |
|---|---|---|
| The Shelton interest | | $ 957,832.12 |
| The Garland interest | | 321,000.00 |
| The Knapp interest | | 6,793,805.33 |
| Taxing agencies | | |
| Clyde Anderson | $ 5,812.65 | |
| Joe Pegoda | 21,449.90 | 27,262.55 |

On April 20, 1981, the State filed with the court a notice of deposit together with a warrant for the total amount of the award "subject to the order of the Defendants as their interest is established...." At that time, the Sheltons were defendants in the lawsuit. The trial court approved the notice the same day and issued a writ of possession to the State.

The State filed objections to the awards for the Garland and Francis and the Knapp interests, and those interests also filed objections. The State filed no objection to the Shelton interest award. Knapps did initially file objections to that award. See: Tex. Prop.Code Ann. art. 21.018 (Vernon 1984), formerly Tex.Rev.Civ.Stat.Ann. art. 3266, subd. 6 (Vernon 1968).

On May 14, 1981, the Sheltons moved to be dismissed as parties in the condemnation suit, attaching to the motion a copy of the Shelton deed to the Knapps, reserving the aggregate, as well as the option to purchase agreement and the lease relating thereto. The motion acknowledged the $957,832.12 award and the receipt of that sum. It further avers the absence of any State objection to the award and contends the Knapps are without standing to object. In July, 1982, the motion was granted dismissing the Sheltons as parties, the order finding in part that the Knapps can assert every claim that they may have as to the "original (SHELTONS) interest against the State of Texas."

During the further protracted course of proceedings, the details of which are not material here, the Knapps filed a certificate of withdrawal and abandonment of any and all objections "they have previously made and filed with respect to the interest claimed by" the Sheltons.

In a later second amended petition, the State alleged in part that the $957,832.12 was "the reasonable cash market value of their leasehold interest" of the Sheltons, and therein claimed a credit for that sum.

In March, 1985, the Knapps, the State, as well as Garland and Francis, entered into a stipulation, preparatory to trial, acknowledging the day of taking was April 19, 1981, and expressly recognizing the Shelton claim existing on that date. In substance, the parties agreed that the Shelton interest "owned or claimed in the subject property ... was the reservation shown and created in the Warranty Deed dated March 15, 1978, from Carroll Ann Shelton Jones, et al, to R.A. Knapp, et al, of record ... and in the Lease Agreement between the parties of even date therewith of record...." The deed and lease agreement were attached to the stipulation as exhibits. The stipulation concluded with this:

> The Defendants having stipulated herein that the State has the right to take and condemn and that all procedural and jurisdictional prerequisites have been met and complied with, shall have the right to open and close in this case.

Accordingly, Garland and Francis and the Knapps proceeded before the jury to establish their damages, and on April 4, 1985, the jury returned the following verdict reading in pertinent part:

> Special Issue No. 1
>
> [R]easonable cash market value on April 19, 1981, ... of the surface estate ... of the 3,520 acre tract ... as a whole as though it belonged to one person.
>
> . . . . .
>
> Answer: $9,900,000.00

> Special Issue No. 2
>
> [R]easonable market value ... of the leasehold interest ... of ... Francis and Garland....
>
> . . . . .
>
> Answer: $1,000,000.00.

The trial court's judgment recites the commissioners' award of April 10, 1981, which we have previously set forth above, including the $957,832.12 to the Sheltons. The court found that the Knapps had objected to the Shelton award and the court had held the Knapps had no standing to

object thereto. The judgment recites the earlier dismissal of the Sheltons, acknowledges the filing by the Sheltons of a disclaimer in the suit, and the absence of the State's objection to the Shelton award. The trial court further found that the $8,099,900.00 award paid by the State had been disbursed as follows on the dates indicated:

| | |
|---|---|
| 4/20/81 | $957,832.12 to James M. Shelton, et al. |
| 4/20/81 | $6,480,964.48 to Defendants Knapp |
| 4/23/81 | $302,564.38 to State National Bank |
| 4/23/81 | $321,000.00 to Defendants Garland and Francis |
| 4/28/81 | $21,449.90 to Joe Pegoda |
| 6/08/83 | $5,812.65 to Clyde Anderson |
| 9/10/84 | $10,276.47 to City of El Paso. |

The sums above to the State National Bank and to the City of El Paso, it appears, were paid at the instance and on behalf of the Knapps.

Continuing with our examination of the judgment, we find among the conclusions of law, in pertinent part, as follows:

That from the pleadings and evidence and verdict of the jury, the *condemnees and Defendants herein,* should have and recover jointly of and from the State of Texas, condemnor, the total sum ... of ... $9,900,000.00, which represents, as determined by the jury, the reasonable market value of the heretofore-described property ... *as if owned by one person;*

. . . . .

That after considering the amounts apportioned to Defendants Knapps by the Commissioners, or $6,793,805.33, there remains by virtue of the jury's verdict an excess amount due to Defendants Knapp of $2,106,194.67 *less taxes due to Clyde M. Anderson and Joe Pegoda or $27,-262.55* for a total of $2,078,932.12 due and payable by Plaintiff to Defendants Knapp.... [Emphasis added.]

The court then orders, adjudges and decrees that the State have and recover the fee simple title to the 3,520–acre tract against the following defendants:

(And included in those listed are the following:)
Carroll Ann Shelton Jones and husband, Luther Jones
James M. Shelton, Jr. and wife, Robin Shelton
James M. Shelton.

It is further decreed that Defendants Knapps have judgment in the sum of $2,078,932.12 and that Garland and Francis have judgment in the sum of $697,000.00.

Concluding with the transcript data, we finally note that in its motion for a new trial, the State complains that the State was compelled to pay $957,832.12 more than it should have, the same being the amount of the award to the Sheltons, that the court by its judgment recognizes the award of the commissioners to the Sheltons and grants title to the State against the Sheltons. The motion also recognizes the clerical error in regard to Garland and Francis in awarding them $697,000.00 instead of $679,000.00.

Having considered the pleadings and the verdict, we turn next to the nature of the case proved as shown by the statement of facts.

The Knapps offered and the court received into evidence a 1978 deed from Carroll Ann Shelton Jones and James M. Shelton, Jr. to R.E. Knapp and R.A. Knapp conveying the 3,520 acres in question. In that deed, the grantors reserved for twenty years the exclusive right to lease all or any part of the acreage for the purpose of operating a quarry and the production and sale of building materials, or for the purpose of removing therefrom gravel, caliche, base material and building rock.

At trial, Richard A. Knapp testified and acknowledged the reservation of the Sheltons, and when asked to give an opinion of the value in place of the building materials, responded in pertinent part as follows:

[S]o I could build a figure of $50,000,-000.00 or some great big number but from the practical standpoint I'd say the value of those materials at the date of taking was $1,500,000.00.
Question: In place?

Answer: In place.

Question: In other words, if you had the opportunity to buy that stuff in place, that is what you would pay for it?

Answer: Right. If I could acquire all those rights for that material in place, I would pay $1,500,000.00 for it.

Later, Mr. Knapp further gave his opinion as to the value of the land being condemned. He stated that the value of the land on April 19, 1981, without the communication site, was $17,260,000.00.

Question: Does it include the one and a half million dollars for the sand and gravel and the rocks and building materials in place?

Answer: Yes, it does.

The Knapps called Charles Osenbaugh as a witness and he gave his opinion that the 3,520 acres had a total value of $15,554,000.00, including $1,000,000.00 for the "contributory value of the aggregate...." Later, this same witness testified that the property was enhanced $1,000,000.00 because of the aggregate. He explained thereafter that aggregate means:

Building material, rocks, caliche, any kind of materials that could be taken off that property.

He persisted in his opinion that the aggregate contributed $1,000,000.00 to the total property market value.

■ To conform to the pleadings, the nature of the case proved and the verdict, as provided in Rule 301, *supra*, it is clear that the judgment should have granted the State credit for $957,832.12 for the amount paid by the State for the Shelton interest, whether the Sheltons were a party to the lawsuit at the time of the judgment or not. The State originally pled the Sheltons as one of the owners of the property. The Special Commissioners specified an award in the indicated amount for that interest. Neither the State nor the Sheltons objected to that award. The State deposited the award with the court. The court ordered it paid to the Sheltons, and they received and retained it. The State received its writ of possession. The Shelton motion to be dismissed as parties was granted. The Knapps withdrew their earlier objection to the Shelton award. The State amended to pray for a credit. The Knapps stipulated with the State preparatory to trial recognizing the Shelton reservation of interest, and proceeded to trial to prove their damages with the right to open and close. Proceeding with their evidence, the Knapps proved that whatever the total was, it included the Shelton aggregate interest.

There can be no doubt that the Shelton interest was included in the $9,900,000.00 found by the jury as the value of the tract "as a whole as though it belonged to one person." The verdict itself expressly so provided. The testimony of Richard A. Knapp, as well as that of the Knapp witness, Osenbaugh, unequivocally demonstrated that whatever total value was found by the jury, it would include the Shelton interest.

The trial court's judgment correctly recites the Shelton award from the commissioners, the absence of the State's objection, the payment of the award, cites that the "condemnees [one of whom was the Sheltons] and the Defendants herein" should recover a total of $9,900,000.00 from the State, grants the State title as against the Sheltons, and correctly applied the principal we employ in modifying, in regard to the $27,262.55 relating to Clyde M. Anderson and Joe Pegoda. Neither of these tax agents were parties to the lawsuit at the time of judgment and, like the Sheltons, were recipients of awards from the Special Commissioners, raised no objection to the award and had none raised regarding them by the State.

The credit for the Shelton interest affects only the Knapp recovery because the value of the Garland and Francis interest was found separately by the jury. Appellant's Point of Error No. Seventeen is sustained to the extent indicated, and the judgment will be modified and reformed to deduct $957,832.12 frcm the $2,078,932.12 awarded the Knapps for a remaining amount of $1,121,100.00 due to the Knapps. Points of Error Nos. Eighteen through Twenty-Two need not be considered because of our disposition of Point of Error No. Seventeen.

Also in regard to the Garland and Francis interest, the trial court's transposition of figures is an apparent clerical error and the necessary data is provided in the judgment to permit a correction. Point of Error No. Twenty-Nine is sustained to the extent indicated, and the judgment to Garland and Francis will be reformed to reflect the correct calculation which is $1,000,000.00 less $321,000.00 previously paid, for a remaining amount due of $679,000.00, rather than $697,000.00. *See also:* Rule 316, Tex.R.Civ.P.

Points of Error Nos. One through Three, in general, concern access rights and easement. It is Appellant's contention that the trial court erred in permitting evidence that the property in question could be developed by use of access rights from War Road lying to the east of the property, presupposing the existence of a public easement, and that it was error to admit testimony regarding possible acquisition of adjacent Public Service Board land and to deny Appellant's motion n.o.v. based on this contention. Appellees Knapps respond that it was proper to permit evidence concerning all of the different access routes available on the date of taking or which reasonably could have been acquired and that, in any event, evidence of possible access from the east did not affect the jury's verdict.

On the date of taking, there was no existing easement, by prescription or otherwise, nor does it appear that Appellees at trial were relying on the existence of such an easement. The access right suggested by the Knapps related rather to one which could be purchased or otherwise acquired in the future from the Public Service Board. We consider then the admissibility of that evidence. The primary issue involving the Knapps was the "just compensation" owed them for the taking of their property. In a condemnation case, when an entire tract is taken, the "just compensation" to be paid to the landowner is the market value of the land on the date of taking. *Heddin v. Delhi Gas Pipeline Company,* 522 S.W.2d 886, 888 (Tex.1975). Thus, the value sought to be established was the market value of the Knapps' property on April 19, 1981.

■ The term "market value" encompasses many factors and considerations, but has been defined as the price for which property will sell by one who desires to sell but is not obliged to do so, and is purchased by one who desires to buy but is under no necessity of buying. *State v. Carpenter,* 126 Tex. 604, 89 S.W.2d 194, 201–202, *reh. denied,* 89 S.W.2d 979, 980 (1936); *Jones v. City of Houston,* 380 S.W. 2d 761, 763 (Tex.Civ.App.—Tyler 1964, no writ). This willing seller and willing buyer test was modified in *City of Austin v. Cannizzo,* 153 Tex. 324, 267 S.W.2d 808 (1954), when the Court suggested that the jury, in determining a property's market value, could also take into consideration "all of the uses to which it is reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future." Id. at 815. In applying the willing seller and willing buyer test and thus determining admissibility of evidence, all factors which would be given weight in negotiations between a buyer and seller are to be considered. *Gleghorn v. City of Wichita Falls,* 545 S.W.2d 446, 447 (Tex.1976); *Cannizzo, supra,* 267 S.W.2d at 815.

■ It is reasonable to contemplate that evidence of future acquisition of access from War Road to the condemned property would have been considered in negotiations between a prospective buyer and seller. Even were it error to admit evidence of potential acquisition of access across Public Service Board land, it would be harmless because there is no showing by Appellant that the jury's verdict was not based solely on access to the property from Transmountain Road. The feasibility of building the Mundy's Gap Road from Transmountain Road to the development was an issue strictly for the jury to decide. There is no indication but that the jury valued the property based solely upon access from the west. Appellant has not shown that the testimony was improperly admitted or that the evidence was reasonably calculated to cause, and probably did cause, the rendition of an improper verdict.

Appellant's Points of Error Nos. One through Three are overruled.

■ In its next major contention contained in Points of Error Nos. Four through Eight, Appellant complains that the trial court erred in admitting evidence offered by Appellees in their presentation of appraisal evidence. Point of Error No. Four asserts that the nine sales offered as comparable to the condemned property did not meet the test of comparability. In a condemnation case, the trial court has substantial discretion in deciding the admissibility of evidence which will aid the jury in determining the market value of the property taken. *State v. Angerman*, 664 S.W. 2d 794, 796 (Tex.App.—Waco 1984, writ ref'd n.r.e.); *Texas Municipal Power Agency v. Berger*, 600 S.W.2d 850, 854 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ). The trial court's determination that a sale offered into evidence is sufficiently similar to be considered comparable can only be reviewed to determine if there was an abuse of discretion. *Queen City Land Company v. State*, 601 S.W.2d 527, 530 (Tex.Civ.App.—Austin 1980, writ ref'd n.r. e.); *Morgan v. State*, 343 S.W.2d 738, 740 (Tex.Civ.App.—El Paso 1961, writ ref'd n.r. e.). The discretion of the trial court is even more broad when a sale is determined to be sufficiently similar to be admissible as a circumstance influencing an expert witness in arriving at his opinion of value. *Texas Electric Service Company v. Graves*, 488 S.W.2d 135, 139 (Tex.Civ.App.—El Paso 1972, writ ref'd n.r.e.).

■ The nine comparable sales admitted into evidence were testified to by Charles Osenbaugh, the appraisal witness for the landowners. Appellant contends that these sales did not meet the required test of comparability because they were sales of tracts that were highly developable, had immediate access and utilities, and were outside the Mountain Development Area. The unique nature and location of the condemned land in this case suggests that perfect comparables would be difficult to find. It appears that the nine sales used by Mr. Osenbaugh, although not exactly comparable, were sufficiently similar to be admissible. Mr. Osenbaugh used the sales to formulate his opinion of the value of the subject property, not as direct evidence of the value of the property. Appellant has failed to show that the trial court abused its broad discretion in admitting the nine sales into evidence. Appellant's Point of Error No. Four is overruled.

■ Appellant's Points of Error Nos. Five and Six contend that the trial court erred in admitting into evidence hypothetical land use plans and subdivision plats for the property because no subdivision existed at the time the property was taken. The general rule in condemnation cases is that when property condemned is raw acreage, as in this case, it is improper to admit into evidence hypothetical plats of nonexistent subdivisions. *Delhi Gas Pipeline Corporation v. Richards*, 659 S.W.2d 861, 864 (Tex.App.—Tyler 1983, no writ). However, such plats are admissible when they are relevant to prove some issue in the case and are limited to that purpose. *Id.* at 864; *Lower Nueces River Water Supply District v. Collins*, 357 S.W.2d 449, 452 (Tex. Civ.App.—San Antonio 1962, writ ref'd n.r. e.).

■ The plats in the case before us were not offered as direct evidence of the value of the property, rather they were offered to show the adaptability of the property for subdivision purposes and as evidence of the highest and best use of the property. We do not believe the admission of the plats in evidence was improper. Appellant's Points of Error Nos. Five and Six are overruled.

Appellant's seventh and eighth points merely restate Appellant's previous contentions and add a no evidence point. As the above discussion indicates, there was some evidence to support the jury's finding of the value of the property. Points of Error Nos. Seven and Eight are overruled.

■ Appellant next claims judicial estoppel. Appellant contends that the landowners were judicially estopped from asserting that the property had a market value over $2,100,000.00. This contention arises from the assertion by Richard Knapp, in a verified pleading filed in the

Knapp inverse condemnation suit against the City of El Paso, that his property was worth $2,100,000.00 after being annexed. Judicial estoppel arises from a position taken or in assertion of fact under oath in a prior judicial proceeding that is contrary to the position taken in later litigation. *Long v. Knox*, 155 Tex. 581, 291 S.W.2d 292, 295 (1956); *LaChance v. McKown*, 649 S.W.2d 658, 660 (Tex.App.—Texarkana 1983, writ ref'd n.r.e.). In the case at hand, there is nothing necessarily conflicting or contradictory in the Knapp assertion that the property was worth $2,100,000.00 in 1978, and the later position that on April 19, 1981, the property had a considerably higher market value. Furthermore, the nature of the taking in this case is different than that in the suit for inverse condemnation. The annexation of the land by the City was not an acquisition of the property. Therefore, when Knapp took the earlier position regarding the value of the property, it was not in terms of the fair market value of the property, but rather the value of the loss of the nonconforming uses to which the land was put prior to the annexation. Judicial estoppel has no application in this case. Appellant's Point of Error No. Nine is overruled.

 In the next group of points, Appellant complains of the award to Appellees Garland and Francis. In response to Special Issue No. Two, the jury found that the market value of the leasehold interest owned by Garland and Francis was $1,000,000.00. As shown in Special Issue No. One, the jury determined that the market value of the condemned land as if owned by one person was $9,900,000.00. The trial court in its judgment correctly deducted the $1,000,000.00 award to Garland and Francis from the $9,900,000.00. The jury's valuation of the property in Special Issue No. One is supported by sufficient evidence. The opinions of the landowners' appraisal witnesses regarding the market value of the property, exclusive of the value of the communication site, were within the same general range. Mike Ridley's value was $12,825,000.00; Charles Osenbaugh was of the opinion that the land was worth $15,554,000.00; David Etzold testified to a value of $13,120,000.00; and Arnold Peinado felt the value was $14,400,000.00. The objections of Appellant regarding the evidence used by these appraisal witnesses in forming their opinions have already been discussed and determined to be without merit in earlier points of error. There is substantial evidence to support the $9,900,000.00 valuation of the property by the jury. In that the jury found that the property had a market value of $9,900,000.00 and that award was supported by ample evidence, independent of evidence regarding the value of the communication site, Appellant has no basis upon which to complain about the $1,000,000.00 award to Garland and Francis. That finding of the jury does not result in Appellant being liable for more than $9,900,000.00. There is no harm to Appellant. The apportionment of the award between Garland and Francis and the Knapps would be a matter between them, and neither Appellee has contested the jury award. See: *Texas Pig Stands, Inc. v. Krueger*, 441 S.W.2d 940, 947 (Tex.Civ.App.—San Antonio 1969, writ ref'd n.r.e.); *Brazos River Authority v. Gilliam*, 429 S.W.2d 949, 952 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.). Appellant's Points of Error Nos. Ten through Sixteen are overruled.

 Appellant's next series of points of error regard the testimony of R.A. Knapp and the granting of prejudgment interest by the trial court. In Point of Error No. Twenty-Three, Appellant claims the trial court erred in allowing the testimony of R.A. Knapp that the property had a market value on the date of purchase which was higher than the price for which he purchased it. As noted and discussed above, the trial court, in a condemnation case where the amount of compensation is the principal issue, has great discretion in admitting evidence to assist the jury in making its determination of market value. *State v. Angerman*, supra; *Texas Municipal Power Agency v. Berger*, supra. The fact that there was evidence that the sale of the property from the Sheltons to the Knapps was not an arms-length transaction supports the view that the trial court did

not abuse its discretion in admitting the testimony of R.A. Knapp. Additionally, a landowner is competent to give his opinion of the market value of his own property. *See: Perry v. Texas Municipal Power Agency*, 667 S.W.2d 259, 263 (Tex.App.— Houston [1st Dist.] 1984, writ ref'd n.r.e.). Appellant has failed to show an abuse of discretion by the trial court in admitting Knapp's testimony. Point of Error No. Twenty-Three is overruled.

In Points of Error Nos. Twenty-Four and Twenty-Five, Appellant urges that the trial court erred in its granting of prejudgment interest. First, Appellant contends that the judgment was improper because it did not state a fixed rate of interest. The judgment of the trial court granted prejudgment interest to Garland and Francis and the Knapps "at the rate of 9% per annum from April 20, 1981, to September 1, 1983 and thereafter until this date at the rate of no less than 10% nor more than 20% as established by the Consumer Credit Commissioner pursuant to Article 5069–1.05." This award of prejudgment interest does not fail to state a fixed rate of interest. The judgment refers to the provisions of Article 5069–1.05 which details the manner in which the judgment interest rate, that is, the rate applicable on the date of the judgment, is to be determined. The rate is readily ascertainable from the Texas Register. Point of Error No. Twenty-Four is overruled, as is Appellant's Point of Error No. Thirty which raises the same contention regarding the trial court's award of postjudgment interest.

In Point of Error No. Twenty-Five, Appellant claims that Article 5069–1.05 does not apply to eminent domain cases. Appellant concedes that its position is contrary to that in a Houston Court of Appeals case and argues that the decision was erroneous. The Texas Supreme Court refused a writ of error in that case. *City of Houston v. Wolfe*, 712 S.W.2d 228 (Tex.App.— Houston [14th Dist.] 1986, *writ ref'd*, 30 Tex.Sup.Ct.J. 12 (Oct. 8, 1986). Appellant's Point of Error No. Twenty-Five is overruled.

In its next-to-last general group of assignments, Appellant presents three points of error regarding the argument of Knapps' attorney. Of the three statements complained of, only one was objected to. The reference to the number of objections made at trial by counsel for Appellant and the statement referring to Mr. Knapp's humble origins brought no objection from Appellant. Also, these specific instances were not raised in Appellant's motion for new trial. Any error as to these two statements was waived. Rule 324(b)(5), Tex.R. Civ.P.

The third statement made by Knapps' counsel to which Appellant assigns error asked the jury, "[w]ould you like the State of Texas to walk in and take your house?" Appellant's objection to this statement was sustained, but Appellant's motion for mistrial was denied. Appellant made no request for an instruction directing the jury to disregard the argument. The failure to request a curative instruction waives any error unless the jury argument was incurable. *Otis Elevator Company v. Wood*, 436 S.W.2d 324, 333 (Tex. 1968); *Fowler v. Garcia*, 687 S.W.2d 517, 520 (Tex.App.—San Antonio 1985, no writ). We believe Appellant's argument that the statement is incurable is without merit. Such a brief statement made at the end of a very long trial should not require a reversal. Additionally, in light of the overruling of the majority of Appellant's previous points of error, Appellant has failed to show that "the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on the proper proceedings and evidence." *Standard Fire Insurance Company v. Reese*, 584 S.W.2d 835, 840 (Tex. 1979). Points of Error Nos. Twenty-Six through Twenty-Eight are overruled.

Finally, Appellant's Point of Error No. Thirty-One raises the issue of cumulative error. Since all but two of Appellant's points of error have been overruled and neither of those two suggest reversal, Point of Error No. Thirty-One is overruled.

The judgment of the trial court is modified and reformed to provide that Appel-

lees Knapps have judgment from Appellant in the sum of $1,121,100.00 ($2,078,932.12 adjudged by the trial court less the sum paid for the Shelton interest of $957,-832.12). It is further modified and reformed to provide that Appellees Garland and Francis have judgment from Appellant in the sum of $679,000.00 ($1,000,000.00 found by the jury less the sum previously paid of $321,000.00). As so modified and reformed, the judgment is in all other respects affirmed.